## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HUDSON PRIVATE LP,<br><br>Plaintiff,<br><br>vs.<br><br>BRON STUDIOS USA, INC., BRON CREATIVE USA, CORP., CREATIVE WEALTH MEDIA FINANCE CORP., and JASON CLOTH,<br><br>Defendants. | Civ. Action No. 7:21-cv-08259<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Hudson Private LP ("Hudson LP or "Plaintiff"), by its undersigned counsel and for its Complaint against defendants Bron Studios USA, Inc. ("Bron Studios"), Bron Creative USA, Corp. ("Bron Creative" and together with Bron Studios, "Bron"), Creative Wealth Media Finance Corp. ("Creative Wealth"), and Jason Cloth ("Cloth" and together with Creative Wealth, and Bron, "Defendants"), alleges as follows:

## INTRODUCTION

1.      This action arises out of Defendants' indebtedness to Hudson LP, aggregating millions of dollars, in connection with Hudson LP's financing of film and/or television productions (the "Film Loans").

## PARTIES

2.      Hudson LP is a limited partnership organized and existing under the laws of the State of New York, with principal offices at 15 Central Avenue, Pearl River, NY 10965.

3.      Hudson LP provides investment advisory services, including investment opportunities in funding independent and large studio films.

1

4.      Bron Studios is a business corporation organized and existing under the laws of the State of Nevada.

5.      Bron Studios develops, finances and produces film, TV and digital projects.

6.      Bron Creative is a business corporation organized and existing under the laws of the State of Nevada.

7.      According to the Bron Creative website, Bron Studios "works alongside its colleagues at Creative Wealth Media, under the branding 'BRON Creative', to provide equity or senior secured debt financing for studio motion pictures and global network series television."

8.      Creative Wealth is a business corporation organized and existing under the laws of Canada, with an office at 151 Bloor Street West, Suite 700, Toronto, Canada M5S 1S4.

9.      According to its website, Creative Wealth "is a prolific film and television financing company that has executive produced over 50 movies, while raising and deploying in excess of $650 million for a portfolio of critical hits, commercial blockbusters and cult favorites."

10.     Creative Wealth is the main financier for Bron Studios.

11.     Cloth is a natural person and resides in Ontario, Canada.

12.     Cloth is the founder and CEO of Creative Wealth, an owner and director of Bron Creative, and represented to Hudson LP that he holds a 20% ownership interest in Bron and is a board member thereof.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff is a citizen of the State of New York, and Bron Creative and Bron Studios are citizens of different states (Nevada), and pursuant to 28 U.S.C. § 1332(a)(2), because

Creative Wealth is a citizen of a foreign state (Canada), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     The Court has personal jurisdiction over Defendants pursuant to New York CPLR § 301 *et seq.* and the United States Constitution, because Defendants regularly and systematically conduct business in New York, avail themselves of the benefits and protections of New York, and own, use or possess real property in New York.

15.      The Court has personal jurisdiction over Defendants pursuant to New York CPLR § 302(a)(1) and the United States Constitution, because the causes of action set forth herein arise from Defendants' transaction of business in New York.

16.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

17.     In the alternative, venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(3), because Defendants are subject to personal jurisdiction in this District.

18.     In various agreements at issue herein, one or more Defendants irrevocably submitted to the jurisdiction of this Court and waived any objection to the laying of venue in this District.

## **FACTUAL BACKGROUND**

19.     From 2017 to 2020, Hudson LP invested monies with both Creative Wealth and Bron via the Film Loans.

20.     As detailed below, Hudson LP was induced to make certain investments with Creative Wealth and Bron (as applicable) based upon representations that the funds advanced would be subsequently conveyed by Creative Wealth and Bron (as applicable) to third-party

production company borrowers for the express purpose of financing the pre-production, production, post-production, and delivery of certain film and/or television productions.

21.     For each of the Film Loans, a wholly-owned subsidiary of Bron was either the underlying production company borrower or was the co-producer of the production.

22.     Each of the Film Loans consisted of a principal amount, interest, a discount, and/or participation interest in the film's net profits (as applicable) and was to be repaid to Hudson LP by specific dates.

23.      Currently, the outstanding principal and interest under the Film Loans, before equity participation and accruing interest and discount, as applicable, is over $17 million with respect to the investment made by Hudson LP.

**Defendants' Misrepresentations**

24.     To induce Hudson LP to enter into the Film Loans and to advance the funds thereunder, Cloth, in his individual capacity and on behalf of Defendants, made various knowingly false representations to Hudson LP (the "Film Loan Representations").

25.     Cloth represented to Hudson LP that the funds advanced by Hudson LP via the Film Loans would be advanced to specific third-party production company borrowers for the express purpose of financing the pre-production, production, post-production, and delivery of certain film and/or television productions.

26.     Cloth also represented to Hudson LP that Bron would "back-stop" the Film Loans to guarantee repayment of the indebtedness owing to Hudson LP thereunder.

27.     Cloth further represented to Hudson LP that Creative Wealth and Bron were well-funded and possessed sufficient security to ensure that the Film Loans would be repaid.

4

28.     In reliance upon the Film Loan Representations, Hudson LP made the Film Loans and advanced approximately $14 million thereunder to Creative Wealth and Bron.

29.     The Film Loan Representations were material because they affected, among other things, Hudson LP's risk analysis in connection with the Film Loans.

**Financing for Motion Picture Project "Fonzo/Capone"**

30.     On or about April 1, 2018, Hudson LP and Creative Wealth entered into a binding Term Sheet (the "Fonzo Term Sheet") pursuant to which Hudson LP provided $3,000,000 to Creative Wealth for the latter's loan to non-party Fonzo, LLC (wholly owned and controlled by Bron Studios) in the amount of up to $12,600,000 in connection with the production of the motion picture entitled "Fonzo" (later renamed "Capone") (the "Fonzo Loan").

31.     The Fonzo Term Sheet is governed by New York law.

32.     Pursuant to the Fonzo Term Sheet, as consideration for its investment, Hudson LP is entitled to 25% of the motion picture's Net Profits (as defined in the Fonzo Term Sheet), in addition to repayment in full of the Fonzo Loan.

33.     The Fonzo Loan originally bore interest at the annual rate of 10% compounded annually, but such rate was increased to 13% on October 1, 2018, and then increased again to 15% on April 1, 2019, in exchange for various written extensions of the maturity date.

34.     The original maturity date for the Fonzo Loan is October 1, 2018, which was extended through the date on which the motion picture was released.

35.     On or about April 1, 2018, Hudson LP and Creative Wealth also entered into a related Participation Agreement (the "Fonzo Participation Agreement") pursuant to which, as consideration for its investment, Hudson LP was issued an undivided fractional interest in the Fonzo Loan (the "Fonzo Participation").

36.     Pursuant to the Fonzo Participation Agreement, Creative Wealth serves as Hudson LP's trustee and agent in connection with the Fonzo Loan, including collecting payments due thereunder and enforcing rights and remedies, and is obligated to account to Hudson LP for its share of proceeds due in connection with the Fonzo Loan.

37.     Creative Wealth has improperly refused to account to Hudson LP for the latter's share of proceeds due in connection with the Fonzo Loan.

38.     The "Capone" motion picture was released in May 2020.

39.     Creative Wealth has defaulted on its repayment obligations to Hudson LP under the Fonzo Term Sheet.

40.     In a signed writing dated April 21, 2021, Cloth affirmed that $2,620,117.56 in principal and $1,052,907.81 in interest was owed to Hudson LP under the Fonzo Term Sheet as of December 31, 2020.

41.     $3,310,596.01 is due and owing to Hudson LP as of August 31, 2021.

**Financing for Motion Picture Project "Greyhound"**

42.     On or about April 1, 2018, Hudson LP, Creative Wealth, Bron Creative, Bron Studios, and Cloth entered into a binding Term Sheet (the "Greyhound Term Sheet") pursuant to which Hudson LP provided $3,000,000 to Creative Wealth in connection with Bron Creative's co-financing and distribution (with non-party Sony Pictures) of the motion picture entitled "Greyhound" (the "Greyhound Loan").

43.     Pursuant to the Greyhound Term Sheet, as consideration for its investment, Hudson LP is entitled to $3,360,000 from the motion picture's revenues, 25% of proceeds received by Bron Creative following repayment of the financing, and 32% of certain facilitation fees.

6

44.     The original maturity date for the Greyhound Loan was extended (in writing) through the date on which the motion picture was released, in exchange for an annual interest rate of 15% from April 1, 2019.

45.     Under the Greyhound Term Sheet, the prevailing party in a dispute arising thereunder is entitled to recover its reasonable attorneys' fees and costs.

46.     On or about April 1, 2018, Hudson LP and Creative Wealth also entered into a related Participation Agreement (the "Greyhound Participation Agreement") pursuant to which, as consideration for its investment, Hudson LP was issued an undivided fractional interest in the Greyhound Loan (the "Greyhound Participation").

47.     Pursuant to the Greyhound Participation Agreement, Creative Wealth serves as Hudson LP's trustee and agent in connection with the Greyhound Loan, including collecting payments due thereunder and enforcing rights and remedies, and is obligated to account to Hudson LP for its share of proceeds due in connection with the Greyhound Loan.

48.     The Greyhound Participation Agreement is governed by New York law and states that the parties thereto irrevocably attorn and submit to the non-exclusive jurisdiction of the state and federal courts located in New York, NY.

49.     Creative Wealth has improperly refused to account to Hudson LP for the latter's share of proceeds due in connection with the Greyhound Loan.

50.     The "Greyhound" motion picture was released in July 2020.

51.     Creative Wealth, Bron Creative, Bron Studios, and Cloth have defaulted on their repayment and other obligations to Hudson LP under the Greyhound Term Sheet.

52.     In a signed writing dated April 21, 2021, Cloth affirmed that $3,360,000.00 in principal and $1,017,389.58 in interest was owed to Hudson LP under the Greyhound Term Sheet as of December 31, 2020.

53.     $1,544,169.02 is due and owing to Hudson LP as of August 31, 2021.

**Financing for Motion Picture Project "Bombshell"**

54.     Hudson LP and Creative Wealth entered into two binding Term Sheets dated April 8, 2019 and June 1, 2019 (together, the "Bombshell Term Sheet") pursuant to which Hudson LP provided $3,000,000 to Creative Wealth in connection with the latter's co-financing and distribution (with non-party Lions Gate Films) of the motion picture entitled "Bombshell" (the "Bombshell Loan").

55.     The Bombshell Term Sheet is governed by New York law.

56.     Pursuant to the Bombshell Term Sheet, Hudson LP was to be repaid its investment, plus a 15% rate of return, on or before the latter of: (a) one year from the date of the Bombshell Term Sheet or (b) 180 days after the "Bombshell" motion picture is released to the public.

57.     Under the Bombshell Term Sheet, in the event Hudson LP is not timely repaid, Hudson LP is entitled to additional interest at the rate of 1.5% per month on the entire outstanding amount until paid.

58.     Moreover, pursuant to the Bombshell Term Sheet, following repayment in full, Hudson LP is entitled to 20% of 100% of the "Bombshell" motion picture's "Net Profits" (as defined in a Collection Account Management Agreement).

59.     In or about 2019, Hudson LP and Creative Wealth entered into a related Participation Agreement (the "Bombshell Participation Agreement") pursuant to which, as

consideration for its investment, Hudson LP was issued an undivided fractional interest in the Bombshell Loan (the "Bombshell Participation").

60.     Pursuant to the Bombshell Participation Agreement, Creative Wealth serves as Hudson LP's trustee and agent in connection with the Bombshell Loan, including collecting payments due thereunder and enforcing rights and remedies, and is obligated to account to Hudson LP for its share of proceeds due in connection with the Bombshell Loan.

61.     The Bombshell Participation Agreement is governed by New York law and states that the parties thereto irrevocably attorn and submit to the non-exclusive jurisdiction of the state and federal courts located in New York, NY.

62.     Creative Wealth has improperly refused to account to Hudson LP for the latter's share of proceeds due in connection with the Bombshell Loan.

63.     Under the Bombshell Term Sheet, the prevailing party in a dispute arising thereunder is entitled to recover its reasonable attorneys' fees and costs.

64.     The "Bombshell" motion picture was released in December 2019, and generated approximately $31.7 million in the United States and an aggregate of about $28 million in other countries.

65.     Creative Wealth has defaulted on its obligations, including payment obligations, to Hudson LP under the Bombshell Term Sheet and the Bombshell Participation Agreement.

66.     $4,029,185.85 is due and owing to Hudson LP as of August 31, 2021.

**Financing for Motion Picture Project "Harry Haft"**

67.     On or about April 8, 2019, Hudson LP and Creative Wealth entered into a binding Term Sheet (the "Harry Haft Term Sheet") pursuant to which Hudson LP provided $3,976,250 to Creative Wealth for the latter's loan to non-party Harry Haft Films, LLC (wholly owned and

controlled by Bron Studios) in the amount of up to $12,500,000 in connection with the production of the motion picture entitled "Harry Haft" (the "Harry Haft Loan").

68.     The Harry Haft Term Sheet is governed by New York law.

69.     Pursuant to the Harry Haft Term Sheet, as consideration for its investment, Hudson LP is entitled to $5,169,125 from the motion picture's gross receipts.

70.     Upon an event of default, the Harry Haft Loan bears interest at the rate of 13% compounded annually.

71.     Under the Harry Haft Term Sheet, the prevailing party in a dispute arising thereunder is entitled to recover its reasonable attorneys' fees and costs.

72.     The Harry Haft Loan matured on April 8, 2021.

73.     Creative Wealth has defaulted on its obligations, including payment obligations, to Hudson LP under the Harry Haft Term Sheet.

74.     $5,437,919.49 is due and owing to Hudson LP as of August 31, 2021.

**Cloth's Recent Admissions of Misrepresentations and Misuse of Film Loan Proceeds**

75.     Cloth advised Hudson LP that, contrary to the Film Loan Representations, as well as the terms of the Film Loan documentation, Film Loan proceeds were used by Creative Wealth for unrelated purposes and dissipated to unidentified recipients, all with the knowledge and approval of Cloth.

76.     For instance, in or about January 2021, Cloth further notified Hudson LP that the $3 million advanced by Hudson LP for the Greyhound Loan was utilized for purposes other than in connection with the "Greyhound" motion picture and that such funds were never conveyed to the underlying production company borrower, Sony Pictures.

77.     Cloth also told Hudson LP that it double-sold the same interest in the Bombshell Loan to both Hudson LP and an affiliate of Creative Wealth.

78.     Despite Cloth showing Hudson LP purported documentation of approximately $11.6 million in foreign sales on the "Capone" motion picture to induce Hudson LP's investment, this collateral was subsequently destroyed, to Hudson LP's detriment, because "Capone" was scheduled to be a theatrical release, but Bron instead released the film via PVOD (video on demand) in May 2020, and no reporting on sales has been provided to Hudson LP.

## FIRST CAUSE OF ACTION
### (Breach of Contract – Fonzo/Capone)

79.     Plaintiff repeats and incorporates by reference paragraphs 1 through 78 above as if fully set forth and realleged herein.

80.     The Fonzo Term Sheet is a valid and binding contract.

81.     Hudson LP performed its obligations under the Fonzo Term Sheet.

82.     In breach of the Fonzo Term Sheet, Creative Wealth failed to fully repay the Fonzo Loan.

83.     As a result of the breach, Hudson LP has been damaged in an amount to be determined at trial, but in no event less than $3,310,596.01, plus interest.

## SECOND CAUSE OF ACTION
### (Accounting – Fonzo Loan)

84.     Plaintiff repeats and incorporates by reference paragraphs 1 through 83 above as if fully set forth and realleged herein.

85.     Hudson LP and Defendants have a fiduciary relationship.

86.     Defendants possess superior knowledge and unfettered access to information pertaining to the Fonzo Loan and the "Fonzo" (or "Capone") motion picture.

87.     Based upon the fiduciary relationship, Defendants are required to account to Hudson LP for, among other things, all financial information related to the "Fonzo" (or "Capone") motion picture, including but not limited to revenues received and income paid and payable to Defendants or their affiliates in connection with the production.

88.     However, in breach of their duties imposed by the fiduciary relationship (and/or the Fonzo Participation Agreement), Defendants have improperly refused Hudson LP's duly issued demands for true and full information concerning the financial affairs of the production.

89.     Absent judicial relief, Hudson LP will not be able to assess the financial condition of the production.

90.     Hudson LP has no adequate remedy a law other than this form of action to have its rights determined as to the matters set forth herein.

91.     Hudson LP is entitled to an accounting of Defendants with respect to the "Fonzo" (or "Capone") motion picture.

**THIRD CAUSE OF ACTION**
**(Breach of Contract – Greyhound)**

92.     Plaintiff repeats and incorporates by reference paragraphs 1 through 91 above as if fully set forth and realleged herein.

93.     The Greyhound Term Sheet is a valid and binding contract.

94.     Hudson LP performed its obligations under the Greyhound Term Sheet.

95.     Creative Wealth, Bron Creative, Bron Studios, and Cloth failed to perform their obligations under the Greyhound Term Sheet, including full repayment of the Greyhound Loan.

96.     As a result of the breach, Hudson LP has been damaged in an amount to be determined at trial, but in no event less than $1,544,169.02, plus interest.

## FOURTH CAUSE OF ACTION
### (Accounting – Greyhound Loan)

97.     Plaintiff repeats and incorporates by reference paragraphs 1 through 96 above as if fully set forth and realleged herein.

98.     Hudson LP and Defendants have a fiduciary relationship.

99.     Defendants possess superior knowledge and unfettered access to information pertaining to the Greyhound Loan and the "Greyhound" motion picture.

100.    Based upon the fiduciary relationship, Defendants are required to account to Hudson LP for, among other things, all financial information related to the "Greyhound" motion picture, including but not limited to revenues received and income paid and payable to Defendants or their affiliates in connection with the production.

101.    However, in breach of their duties imposed by the fiduciary relationship (and/or the Greyhound Participation Agreement), Defendants have improperly refused Hudson LP's duly issued demands for true and full information concerning the financial affairs of the production.

102.    Absent judicial relief, Hudson LP will not be able to assess the financial condition of the production.

103.    Hudson LP has no adequate remedy a law other than this form of action to have its rights determined as to the matters set forth herein.

104.    Hudson LP is entitled to an accounting of Defendants with respect to the "Greyhound" motion picture.

## FIFTH CAUSE OF ACTION
### (Breach of Contract – Bombshell)

105.    Plaintiff repeats and incorporates by reference paragraphs 1 through 104 above as if fully set forth and realleged herein.

106.    The Bombshell Term Sheet is a valid and binding contract.

107.    The Bombshell Participation Agreement is a valid and binding contract.

108.    Hudson LP performed its obligations under the Bombshell Term Sheet.

109.    Hudson LP performed its obligations under the Bombshell Participation Agreement.

110.    Creative Wealth failed to perform its obligations under the Bombshell Term Sheet and Bombshell Participation Agreement, including full repayment of the Bombshell Loan.

111.    As a result of the breach, Hudson LP has been damaged in an amount to be determined at trial, but in no event less than $4,029,185.85, plus interest.

**SIXTH CAUSE OF ACTION**
**(Accounting – Bombshell Loan)**

112.    Plaintiff repeats and incorporates by reference paragraphs 1 through 111 above as if fully set forth and realleged herein.

113.    Hudson LP and Defendants have a fiduciary relationship.

114.    Defendants possess superior knowledge and unfettered access to information pertaining to the Bombshell Loan and the "Bombshell" motion picture.

115.    Based upon the fiduciary relationship, Defendants are required to account to Hudson LP for, among other things, all financial information related to the "Bombshell" motion picture, including but not limited to revenues received and income paid and payable to Defendants or their affiliates in connection with the production.

116.    However, in breach of their duties imposed by the fiduciary relationship (and/or the Bombshell Participation Agreement), Defendants have improperly refused Hudson LP's duly issued demands for true and full information concerning the financial affairs of the production.

117.    Absent judicial relief, Hudson LP will not be able to assess the financial condition of the production.

118.    Hudson LP has no adequate remedy a law other than this form of action to have its rights determined as to the matters set forth herein.

119.    Hudson LP is entitled to an accounting of Defendants with respect to the "Bombshell" motion picture.

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract – Harry Haft)**

120.    Plaintiff repeats and incorporates by reference paragraphs 1 through 119 above as if fully set forth and realleged herein.

121.    The Harry Haft Term Sheet is a valid and binding contract.

122.    Hudson LP performed its obligations under the Harry Haft Term Sheet.

123.    Creative Wealth failed to perform its obligations under the Harry Haft Term Sheet, including full repayment of the Harry Haft Loan.

124.    As a result of the breach, Hudson LP has been damaged in an amount to be determined at trial, but in no event less than $5,437,919.49, plus interest.

**EIGHTH CAUSE OF ACTION**
**(Conversion)**

125.    Plaintiff repeats and incorporates by reference paragraphs 1 through 124 above as if fully set forth and realleged herein.

126.    Hudson LP has the right to possess the funds it deposited with Creative Wealth.

127.    Upon information and belief, Defendants are in possession of Hudson LP's funds.

128.    Defendants refused Hudson LP's demand for the return of its money and have continued their unlawful possession of the converted funds.

15

129.   Defendants' unauthorized act of converting Hudson LP's money has deprived it of its rightful possession of such property.

130.   The specific and identifiable funds are those monies which Hudson LP deposited with Creative Wealth, which were not spent on the pre-production, production, post-production, and delivery of the above-referenced films.

131.   As a direct and proximate result of Defendants' conversion, Hudson LP has been damaged in an amount to be determined at trial, plus interest.

**NINTH CAUSE OF ACTION**
**(Alter Ego Liability)**

132.   Plaintiff repeats and incorporates by reference paragraphs 1 through 131 above as if fully set forth and realleged herein.

133.   Cloth is an officer and owner of Creative Wealth.

134.   Cloth exercises complete domination and control over Creative Wealth.

135.   Cloth operates Creative Wealth without recognition of corporate formalities and without regard to its being a distinct and separate legal entity.

136.   Cloth used Creative Wealth to perpetrate a wrong and injustice against Plaintiff such that Cloth should be liable to Hudson LP for obligations owed by Creative Wealth under the Film Loans.


**WHEREFORE**, Plaintiff prays for judgment in favor of Plaintiff and against Defendants, jointly and severally, as follows:

A.     On the First Cause of Action for breach of the Fonzo Term Sheet, monetary damages against Creative Wealth in an amount to be determined at trial, but in no event less than $3,310,596.01, plus interest;

B.      On the Second Cause of Action, an accounting of Defendants with respect to the "Fonzo" (or "Capone") motion picture;

C.      On the Third Cause of Action for breach of the Greyhound Term Sheet, monetary damages against Creative Wealth, Bron Creative, Bron Studios, and Cloth, jointly and severally, in an amount to be determined at trial, but in no event less than $1,544,169.02, plus interest;

D.      On the Fourth Cause of Action, an accounting of Defendants with respect to the "Greyhound" motion picture;

E.      On the Fifth Cause of Action for breach of the Bombshell Term Sheet and Bombshell Participation Agreement, monetary damages against Creative Wealth and Cloth, jointly and severally, in an amount to be determined at trial, but in no event less than $4,029,185.85, plus interest;

F.      On the Sixth Cause of Action, an accounting of Defendants with respect to the "Bombshell" motion picture;

G.      On the Seventh Cause of Action for breach of the Harry Haft Term Sheet, monetary damages against Creative Wealth in an amount to be determined at trial, but in no event less than $5,437,919.49, plus interest;

H.      On the Eighth Cause of Action for conversion, monetary damages against Defendants, jointly and severally, in an amount to be determined at trial, plus interest;

I.      On the Ninth Cause of Action for alter ego liability, monetary damages against Cloth in an amount to be determined at trial, plus interest;

J.      Attorneys' fees and costs; and

K.      Such other and further relief as the Court deems just and appropriate.

Dated: New York, New York
        October 6, 2021

**MEISTER SEELIG & FEIN LLP**

By: /s/  Mitchell Schuster_____
        Mitchell Schuster
        Kevin Fritz
125 Park Avenue, 7th Floor
New York, New York 10017
Tel: (212) 655-3500
E-mail:  ms@msf-law.com
E-mail:  kaf@msf-law.com
*Attorneys for Plaintiff*