UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HUDSON PRIVATE LP and HUDSON PRIVATE : CORP.,

Plaintiffs,

v.

BRON STUDIOS USA, INC., BRON CREATIVE
USA, CORP., CREATIVE WEALTH MEDIA
FINANCE CORP., and JASON CLOTH,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.  7:21-cv-08259-CS


**JOINT MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS BRON STUDIOS USA, INC.,
BRON CREATIVE USA CORP., CREATIVE WEALTH MEDIA
FINANCE CORP., AND JASON CLOTH'S MOTION TO DISMISS**


Boies Schiller Flexner LLP
Joshua I. Schiller, Esq.
Benjamin Margulis, Esq.
55 Hudson Yards
New York, New York 10001


HERRICK, FEINSTEIN LLP
William R. Fried, Esq.
Samuel J. Bazian, Esq.
2 Park Avenue
New York, New York 10016

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

ALLEGATIONS OF THE COMPLAINT ....................................................................... 3

    A.    The Parties ................................................................................................ 4

    B.    The Term Sheets and Participation Agreements ................................... 4

        1.    The Fonzo Financing .......................................................... 5

        2.    The Greyhound Financing ................................................... 5

        3.    The Bombshell Financing .................................................... 6

        4.    The Harry Haft Financing .................................................... 6

    C.    Plaintiffs' Causes of Action ..................................................................... 6

ARGUMENT ................................................................................................................... 7

POINT I    PLAINTIFFS' CLAIMS AGAINST BRON STUDIOS USA MUST
        BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ...................... 7

    A.    The Amended Complaint Fails to Allege General Jurisdiction
        Over BRON Studios USA Under CPLR 301 ....................................... 7

    B.    The Amended Complaint Fails to Allege Specific Jurisdiction
        Over BRON Studios USA Under CPLR 302(a)(1) ............................... 9

    C.    BRON Studios USA Did Not Agree to Submit
        to New York Jurisdiction for any of Plaintiffs' Claims ..................................... 10

POINT II    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY
        AGAINST BRON STUDIOS USA AND JASON CLOTH FOR
        FAILURE TO STATE A CLAIM ..................................................................... 10

    A.    BRON Studios USA and Cloth Had No Repayment Obligations Under
        The Greyhound Term Sheet and Therefore Could Not Have Breached It ......... 11

    B.    Plaintiffs' Accounting Claims Fail as a Matter of Law ..................................... 13

    C.    Plaintiffs' Conversion Claim Fails ........................................................... 17

D.     Plaintiffs Have Failed to State a Claim for Alter Ego Liability
Against Jason Cloth ....................................................................................... 21

POINT III     SEVERAL OF THE COMPLAINT'S CAUSES OF ACTION FAIL
AS AGAINST BRON CREATIVE USA AND CREATIVE WEALTH ........... 23

A.     Plaintiffs' Accounting Claims Fail Against Bron Creative USA
and Creative Wealth ....................................................................................... 23

B.     The Conversion Claims Fails Against Bron Creative USA
and Creative Wealth ....................................................................................... 25

CONCLUSION ................................................................................................ 25

**TABLE OF AUTHORITIES**

Page

**Federal Cases**

*Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*,
 2019 WL 719252 (S.D.N.Y. 2019) ...................................................................14

*In re Aluminum Warehousing Antitrust Litig.*,
 90 F. Supp. 3d 219 (S.D.N.Y. 2015) ...................................................................7

*Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*,
 159 F. Supp. 3d 324 (E.D.N.Y. 2016) .........................................................23, 24

*Banks v. Corr. Servs. Corp.*,
 475 F. Supp. 2d 189 (E.D.N.Y. 2007) .................................................................24

*Best Van Lines, Inc. v. Walker*,
 490 F.3d 239 (2d Cir. 2007) ........................................................................7, 10

*Bryant v. Comm'r of Soc. Sec.*,
 2015 WL 6758094 (S.D.N.Y. 2015) ...................................................................19

*In re Chateaugay Corp.*,
 10 F.3d 944 (2d Cir. 1993) .............................................................................21

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
 123 F. Supp. 2d 133 (S.D.N.Y. 2000) .................................................................18

*Comprehensive Habilitation Servs., Inc. v. Com. Funding Corp.*,
 2009 WL 935665 (S.D.N.Y. 2009) .....................................................................17

*Cueto-Reyes v. All My Sons Moving Co.*,
 2010 WL 11579989 (D. Nev. 2010) ...................................................................13

*In re Currency Conversion Fee Antitrust Litig.*,
 265 F. Supp. 2d 385 (S.D.N.Y. 2003) .................................................................22

*Double Alpha, Inc. v. Mako Partners, L.P.*,
 2000 WL 1036034 (S.D.N.Y. 2000) ...................................................................20

*Dunham Tr. Co. v. Wells Fargo Bank, N.A.*,
 2019 WL 5684172 (D. Nev. 2019) .....................................................................17

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
 837 F. Supp. 2d 162 (S.D.N.Y. 2011) .........................................................16, 24

*Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*,
 2009 WL 3076094 (S.D.N.Y. 2009) ...................................................................22

*Farsura v. QC Terme US Corp.*,
2022 WL 4226266 (S.D.N.Y. 2022)..................................................................................7, 8

*Glob. View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*,
288 F. Supp. 2d 473 (S.D.N.Y. 2003)....................................................................................20

*Gmurzynska v. Hutton*,
257 F. Supp. 2d 621 (S.D.N.Y. 2003)......................................................................................8

*Green v. Beer*,
2007 WL 576089 (S.D.N.Y. 2007).........................................................................................15

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014)......................................................................................................8

*GWG MCA Cap., Inc. v. Nulook Cap., LLC*,
2019 WL 1084777 (E.D.N.Y. 2019)......................................................................................20

*High View Fund, L.P. v. Hall*,
27 F. Supp. 2d 420 (S.D.N.Y. 1998)......................................................................................19

*Marczeski v. Kamba*,
2001 WL 237204 (D. Conn. 2001), *aff'd*, 355 F.3d 206 (2d Cir. 2004)...................................8

*Martinez v. Capital One, N.A.*,
863 F. Supp. 2d 256 (S.D.N.Y. 2012),
*aff'd & remanded*, 742 F.3d 520 (2d Cir. 2013) ....................................................................17

*Megna v. Biocomp Labs. Inc.*,
166 F. Supp. 3d 493 (S.D.N.Y. 2016)......................................................................................8

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
975 F. Supp. 2d 392 (S.D.N.Y. 2013)....................................................................................21

*Nat'l Westminster Bank, U.S.A. v. Ross*,
130 B.R. 656 (S.D.N.Y. 1991)...............................................................................................14

*PetEdge, Inc. v. Garg*,
234 F. Supp. 3d 477 (S.D.N.Y. 2017).....................................................................................14

*Richardson v. Nat'l R.R. Passenger Corp.*,
2022 WL 3701492 (S.D.N.Y. Aug. 26, 2022) ........................................................................8

*Rose v. Rahfco Mgmt. Grp.*,
2014 WL 7389900 (S.D.N.Y. 2014)......................................................................................19

*Rush v. Oppenheimer & Co.*,
779 F.2d 885 (2d Cir. 1985)......................................................................................................1

*Russell Pub. Grp., Ltd. v. Brown Printing Co.*,
  2014 WL 1329144 (S.D.N.Y. 2014) ................................................................ 16

*Shak v. Adelphi Univ.*,
  549 F. Supp. 3d 267 (E.D.N.Y. 2021) ............................................................. 21

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014) ............................................................................. 8

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ........................................................................ 7, 8

*Stadt v. Fox News Network LLC*,
  719 F. Supp. 2d 312 (S.D.N.Y. 2010) ............................................................ 16

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*,
  2017 WL 2627912 (S.D.N.Y. 2017) ............................................................... 22

*W. Nevada Supply Co. v. Aneesard Mgmt., LLC*,
  2011 WL 1118683 (D. Nev. 2011) ................................................................. 13

*Weinar v. Lex*,
  2014 WL 325698 (S.D.N.Y. Jan. 23, 2014) ..................................................... 9

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs.*,
  2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) .................................................. 8

### State Cases

*AHA Sales, Inc. v. Creative Bath Prods., Inc.*,
  58 A.D.3d 6 (2d Dep't 2008) ......................................................................... 14

*Barlow v. Skroupa*,
  173 N.Y.S.3d 98 (Sup. Ct. N.Y. Cty. 2022) ................................................... 17

*Bd. of Managers of Highpoint Condo. v. E./W. Venture*,
  278 A.D.2d 55 (1st Dep't 2000) ..................................................................... 15

*City of N.Y. v. 611 W. 152nd St., Inc.*,
  273 A.D.2d 125 (1st Dep't 2000) ................................................................... 17

*E. End Labs., Inc. v. Sawaya*,
  79 A.D.3d 1095 (2d Dep't 2010) .................................................................... 14

*L. Magarian & Co. v. Timberland Co.*,
  245 A.D.2d 69 (1st Dep't 1997) ..................................................................... 14

*McBride v. KPMG Int'l,*
    135 A.D.3d 576 (1st Dep't 2016) ...............................................................18, 19, 20

*Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n,*
    482 P.3d 665 (Nev. 2021) ..................................................................................17

*Peters Griffin Woodward, Inc. v. WCSC, Inc.,*
    88 A.D.2d 883 (1st Dep't 1982) ........................................................................21

*RNK Cap. LLC v. Natsource LLC,*
    76 A.D.3d 840 (1st Dep't 2010) ........................................................................15

*Rep. of Haiti v. Duvalier,*
    211 A.D.2d 379 (1st Dep't 1995) ......................................................................14

*Saul v. Cahan,*
    153 A.D.3d 947 (2d Dep't 2017) .......................................................................14

*Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes*
    *v. Salomon Bros. Int'l,*
    251 A.D.2d 137 (1st Dep't 1998) ......................................................................16

### Canadian Cases

*Braysan Props. Inc. "In Trust" v. Muchos,*
    2022 CarswellOnt 9215, 2022 ONSC 3703 (Ont. Sup. Ct. 2022) .........................12

*Carillion Canada Holdings Inc. (Re),*
    2021 CarswellOnt 9193, 2021 ONCA 468 (Ont. App. Ct. 2021) ..........................17

*Enercare Home & Com. Servs. Ltd. P'ship v. Grand Hvac Leasing Ltd.,* 2020
    CarswellOnt 17003, 2020 ONSC 6946 (Ont. Sup. Ct. 2020) ...........................12, 17

*Paul v. Pizale,*
    2011 CarswellOnt 4539, 2011 ONSC 3490 (Ont. Sup. Ct. 2011) .........................13

*Persaud v. Telus Corp.,*
    2017 CarswellOnt 8934, 2017 ONCA 479 (Ont. App. Ct. 2017) ..........................12

*Pita Royale Inc. (Aroma Taste of the Middle E.) v. Buckingham Props. Inc.,*
    2019 CarswellOnt 8106, 2019 ONCA 439 (Ont. App. Ct. 2019) ..........................21

*Rothman v. Tabrizi,*
    2008 CarswellOnt 8288 (Ont. Sup. Ct. 2008) .....................................................17

*Unique Lighting v. Green Servs.,*
    2019 CarswellOnt 12390, 2019 ONSC 4438 (Ont. Sup. Ct. 2019) ........................21

## Statutes

CPLR 301..................................................................................................2, 7, 8

CPLR 302(a)(1) .......................................................................................2, 7, 9

Fed. R. Civ. P. 12(b)(2)......................................................................1, 2, 7, 10

Fed. R. Civ. P. 12(b)(6).........................................................................1, 2, 20

Defendants BRON Studios USA, Inc. ("BRON Studios USA"), Bron Creative USA, Inc. ("Bron Creative USA"), Creative Wealth Media Finance Corp. ("Creative Wealth") and Jason Cloth ("Cloth" and collectively, "Defendants") respectfully submit this joint memorandum of law in support of their motion for an Order: (i) dismissing the Amended Complaint in its entirety as against BRON Studios USA pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6); (ii) dismissing the Amended Complaint in its entirety as against Cloth pursuant to Fed. R. Civ. P. 12(b)(6); and (iii) dismissing the Amended Complaint's second, fifth, eighth and eleventh causes of action as against Bron Creative USA and Creative Wealth pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

This should be a straightforward contract dispute between Plaintiffs, on the one hand, and Creative Wealth and Bron Creative USA, on the other. Plaintiffs, investors who allegedly advanced funds to Creative Wealth in connection with the financing of four films, claim that Creative Wealth and Bron Creative USA are indebted to them pursuant to several financing "term sheets" and obligated to provide them with financial information concerning the films pursuant to certain related "participation agreements."

Nevertheless, Plaintiffs have improperly dragged BRON Studios USA—a film production company—and Jason Cloth—a principal of Creative Wealth and Bron Creative USA—into this action, even though the Court lacks jurisdiction over BRON Studios USA and Plaintiffs have failed to state a single claim against either BRON Studios USA or Cloth.

---

[1] While Defendants initially intended to file a motion to compel arbitration and, in the alternative, to move to dismiss, Defendants have decided to proceed with the instant motion to dismiss at this time, while reserving their right to move to compel arbitration, or to raise agreement to arbitrate as an affirmative defense, at a later date. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888 (2d Cir. 1985) (holding that a motion to dismiss "alone, however, does not waive the right to arbitrate").

As a threshold matter, the Court lacks personal jurisdiction over BRON Studios USA, a Nevada corporation. Despite invoking N.Y. CPLR 301 and N.Y. CPLR 302(a)(1) of New York's long-arm statute, Plaintiffs' have failed to plead any non-conclusory allegations that BRON Studios is at home, or even transacted business, in New York. And, the only contract that Plaintiffs allege BRON Studios USA entered into—the Greyhound term sheet—lacks any agreement to litigate in New York. BRON Studios USA should therefore be dismissed from this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

The Amended Complaint suffers from several substantive flaws as well, requiring the dismissal of BRON Studios USA and Cloth from this action pursuant to Fed. R. Civ. P. 12(b)(6). The Amended Complaint asserts a lone breach of contract claim against BRON Studios USA and Cloth—for breach of the Greyhound term sheet—but does not identify a single provision that BRON Studios USA or Cloth breached. Nor could it. Neither BRON Studios USA nor Cloth had any performance obligations to Plaintiffs, let alone obligations to repay money allegedly advanced to Creative Wealth under that term sheet. BRON Studios USA and Cloth could not have breached the Greyhound term sheet, and the claim is therefore unsustainable.

Plaintiffs' three accounting claims and conversion claim should be dismissed for similar reasons. Plaintiffs cannot seek an accounting from BRON Studios USA or Cloth in the absence of a fiduciary relationship with them—a relationship that the Greyhound term sheet disclaims—and they cannot state a conversion claim without any allegation that Cloth possessed Plaintiffs' funds or that BRON Studios USA exercised any unauthorized dominion over Plaintiffs' funds. The conversion claim fails for the additional, independent reasons that Plaintiffs have not alleged a conversion of specific, identifiable funds, and though disguised as a tort claim, the conversion claim is nothing more than a rehashing of Plaintiffs' contract claims.

The only other claim against Cloth is for alter ego liability. That claim must be dismissed under well-settled Ontario law, as there is no substantive allegation that Cloth incorporated or used Creative Wealth for an illegal, fraudulent or otherwise improper purpose. There is simply no basis to hold Cloth personally liable, and he should be dismissed from this action.

As to Bron Creative USA and Creative Wealth, Plaintiffs fail to state claims against them for accountings and conversion. The term sheets do not create a fiduciary relationship between the parties, and although Plaintiffs allege that Bron Creative USA and Creative Wealth are obligated by the participation agreements to provide accountings, Plaintiffs are already seeking specific performance of those agreements, rendering the accounting claims duplicative. The conversion claim against Bron Creative USA and Creative Wealth fail for several of the same reasons stated above with regard to BRON Studios USA and Cloth: Plaintiffs do not allege that Bron Creative USA or Creative Wealth converted specifically identifiable funds, and the claim seeks damages for alleged breaches of contract.

Accordingly, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety as against BRON Studios USA and Jason Cloth, and dismiss the second, fifth, eighth and eleventh causes of action as against Bron Creative USA and Creative Wealth.

## ALLEGATIONS OF THE COMPLAINT

The allegations relevant to this motion are derived from the Amended Complaint, as well as the document referred to in paragraph 43 therein and which is appended to the accompanying Declaration of Jason Cloth, sworn to on September 30, 2022 ("Cloth Decl."). The facts relevant to this motion to dismiss may be summarized as follows:

A. The Parties

Plaintiffs are New York entities that provide investment advisory services and investment opportunities to fund studio films. Am. Compl. ¶¶ 2-4. Defendant BRON Studios USA, a Nevada corporation, is a film production company. *Id.* ¶¶ 5-6. Bron Creative USA and Creative Wealth are entities organized under the laws of Nevada and Canada, respectively, and are in the business of providing financing for films and other motion pictures. *Id.* ¶¶ 7-10. Cloth resides in Ontario, Canada and is the founder and CEO of Creative Wealth, as well as an owner and director of Bron Creative USA. *Id.* ¶¶ 12-13. None of the Defendants are New York residents. *Id.* ¶ 14.

B. The Term Sheets and Participation Agreements

Plaintiffs allege that they entered into agreements with Defendants pursuant to which they collectively advanced $19 million to Creative Wealth to be used towards the financing of four films: (1) "Fonzo" (later named "Capone"); (2) "Greyhound"; (3) "Bombshell"; and (4) "Harry Haft." *Id.* ¶¶ 29, 31, 43, 55, 70. Defendant BRON Studios USA is not alleged to be a party to any of the agreements except one, the Greyhound term sheet.[2]

Plaintiffs allege that, in connection with the financings of the first three films—Fonzo, Greyhound and Bombshell—one or both of them entered into binding term sheets with one or more of Defendants (collectively, the "Term Sheets") and participation agreements (collectively, the "Participation Agreements") pursuant to which they agreed to advance funds to Creative Wealth in exchange for a return of their principal investments, plus an annual rate of interest and the right to a share in the profits of each film. *Id.* ¶¶ 31-69. In connection with the fourth film,

---

[2] The Amended Complaint, in a summary paragraph, refers to Plaintiffs making "certain investments with Creative Wealth and Bron"—without differentiating between BRON Studios USA and Bron Creative, *id.* ¶ 21; however, Plaintiffs do not allege any agreements under which Plaintiffs invested in or advanced funds to BRON Studios USA; therefore, this paragraph must be referring to Bron Creative.

Harry Haft, Hudson LP alleges that it entered into a binding term sheet with Creative Wealth, but not a participation agreement. *Id.* ¶¶ 70-78.

### 1. *The Fonzo Financing*

Specifically, Plaintiffs allege that, on or about April 1, 2018, Hudson LP and Creative Wealth entered into a term sheet and participation agreement pursuant to which Hudson provided $3,000,000 to partially fund Creative Wealth's financing of Fonzo. *Id.* ¶ 31. Plaintiffs do not allege any other parties to these agreements. Hudson LP alleges that, pursuant to the Fonzo term sheet, it is entitled to repayment of its principal investment, plus interest, and 25% of the film's Net Profits. *Id.* ¶¶ 33-34. Hudson LP further alleges that pursuant to the participation agreement, Creative Wealth is obligated to account to it in connection with the film's finances and Hudson LP's share of proceeds. *Id.* ¶¶ 37-38.

### 2. *The Greyhound Financing*

Hudson LP similarly alleges that, in connection with the financing of Greyhound, it entered into a term sheet and participation agreement with Creative Wealth, Bron Creative USA, BRON Studios USA and Cloth on or about April 1, 2018, pursuant to which it advanced $3,000,000 to Creative Wealth. *Id.* ¶ 43. Hudson LP alleges that, pursuant to the Greyhound term sheet (*see* Cloth Decl., Ex. A), it is entitled to $3,360,000 from the film's revenues, a share of film proceeds received by Bron Creative, certain facilitation fees and interest on the advanced funds. Am. Compl. ¶ 44. Hudson LP further alleges that under the Greyhound participation agreement, Creative Wealth is obligated to account to it in connection with the film's finances and Hudson LP's share of proceeds. *Id.* ¶¶ 47-48.

### 3. *The Bombshell Financing*

Plaintiffs allege that, in 2019, each of them entered into term sheets with Creative Wealth and Cloth pursuant to which Hudson LP advanced $3,000,000 and Hudson Corp. advanced $5,000,000 to Creative Wealth for the financing of Bombshell. *Id.* ¶ 55. Plaintiffs allege that, under the Bombshell term sheets, Plaintiffs were to be repaid their investments, plus interest and a percentage of profits derived from the film. *Id.* ¶¶ 57-59. Plaintiffs further allege that they entered into participation agreements pursuant to which Creative Wealth is obligated to account to Plaintiffs in connection with the film's finances and Plaintiffs' share of proceeds. *Id.* ¶¶ 60-61.

### 4. *The Harry Haft Financing*

With regard to Harry Haft, Hudson LP alleges that, on or about April 8, 2019, it entered into a term sheet with Creative Wealth pursuant to which it advanced $3,976,250 in exchange for $5,169,125 from the film's gross receipts. *Id.* ¶¶ 70, 72.

### C. Plaintiffs' Causes of Action

Plaintiffs claim that Defendants have failed to repay the sums owed pursuant to the Term Sheets and refused to account to Plaintiffs for the amounts due to them, as required by the Participation Agreements. They assert twelve causes of action in total, including four causes of action for the alleged breaches of each of the Term Sheets, three causes of action for specific performance of the Participation Agreements' accounting provisions, three additional causes of action for an accounting, one cause of action for conversion, and one cause of action for alter ego liability against Cloth. *Id.* ¶¶ 83-163.

**ARGUMENT**

**POINT I**

**PLAINTIFFS' CLAIMS AGAINST BRON STUDIOS USA
MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

All claims against BRON Studios USA, a Nevada corporation, (Am. Compl. ¶ 4), must be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Plaintiffs bear the "burden of demonstrating personal jurisdiction over each" defendant with non-conclusory allegations. *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 229 (S.D.N.Y. 2015). The Amended Complaint, however, alleges that BRON Studios USA is *not* a "citizen" of New York—either through incorporation or principal place of business—as otherwise diversity jurisdiction in this suit brought by New York plaintiffs, would be destroyed. Am. Compl. ¶ 14. Plaintiffs therefore are required to allege facts establishing jurisdiction over BRON Studios USA under the long-arm statute "of the State of New York, in which the district court sits." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). Plaintiffs make three attempts at invoking jurisdiction over BRON Studios USA—general jurisdiction under CPLR 301, specific jurisdiction under CPLR 302(a)(1), and jurisdiction by agreement. Each fails.

A. The Amended Complaint Fails to Allege General Jurisdiction
   Over BRON Studios USA Under CPLR 301

To establish jurisdiction over BRON Studios USA using CPLR 301, Plaintiffs must provide allegations establishing "that this is a 'truly exceptional case' where this Court should exercise general jurisdiction over a nondomiciliary defendant." *Farsura v. QC Terme US Corp.*, 2022 WL 4226266, at *4 (S.D.N.Y. 2022) (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018)). Plaintiffs have not done so.

Plaintiffs instead rely on conclusory group-pleading that "Defendants regularly and systematically conduct business in New York, avail themselves of the benefits and protections of New York, and own, use or possess real property in New York." Am. Compl. ¶ 15. "These conclusory allegations are insufficient to establish jurisdiction." *Farsura*, 2022 WL 4226266, at *4; *see Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) ("[C]onclusory allegations are not enough to establish personal jurisdiction." (quoting *Marczeski v. Kamba*, 2001 WL 237204, at *1 (D. Conn. 2001), *aff'd*, 355 F.3d 206 (2d Cir. 2004)). Just as merely asserting a defendant's "'substantial and continuous activities' . . . is not sufficient to establish personal jurisdiction," *Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 500 (S.D.N.Y. 2016), the Amended Complaint's conclusory allegations that "Defendants regularly and systematically conduct business" fail to satisfy CPLR 301. Am. Compl. ¶ 15.

Even if Plaintiffs had alleged specific facts to back up these assertions, they still fall short of the "exceptional" circumstances necessary to treat a non-resident as being "at home" in New York. *Farsura*, 2022 WL 4226266, at *4 (quoting *SPV Osus Ltd*, 882 F.3d at 343); *see Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (local branch offices do not create general jurisdiction over non-resident bank); *Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs.*, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020). Contrary to Plaintiffs conclusory assertions, "[n]ot every company that regularly 'does business' in New York is 'at home' there." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 n.2 (2d Cir. 2014). For example, Amtrak was held not to be "'at home' in New York," even though it does "more than twice as much business" there than in its "principal place of business in Washington D.C." *Richardson v. Nat'l R.R. Passenger Corp.*, 2022 WL 3701492, at *2 (S.D.N.Y. Aug. 16, 2022). Plaintiffs therefore cannot invoke CPLR 301 against BRON Studios USA.

B. The Amended Complaint Fails to Allege Specific Jurisdiction
Over BRON Studios USA Under CPLR 302(a)(1)

Equally unavailing is Plaintiffs' attempt at imposing jurisdiction under CPLR 302(a)(1), which requires allegations showing that Plaintiffs claims are "arising from" BRON Studios USA "transact[ing] any business within the state or contract[ing] anywhere to supply goods or services in the state." CPLR 302(a)(1).  Here again, the Amended Complaint dispenses with factual allegations and relies solely on conclusory group-pleading that "the causes of action set forth herein arise from Defendants' transaction of business in New York."  Am. Compl. ¶ 16.

Nowhere does the Amended Complaint point to a single meeting that BRON Studios USA, attended or activity that undertook, in New York.  The *only* business that BRON Studios USA is alleged to have taken in the complaint is (1) entering into the Greyhound term sheet and (2) around a year later, sending two emails to Hudson LP and providing it with a copy of a letter to Creative.  Am. Compl. ¶¶ 43, 151-54.  The Greyhound Term Sheet does not call for any activities in New York, is governed by Canadian law, and has a forum-selection clause identifying Toronto, Canada, as venue for resolving disputes.  Cloth Decl., Ex. A at 2.  It therefore cannot constitute doing business in New York.

Nor can the isolated communications the Amended Complaint alleges constitute purposeful conduct directed at New York, as they are "too insubstantial and limited to constitute the transaction of business."  *Weinar v. Lex*, 2014 WL 325698, at *5 (S.D.N.Y. Jan. 23, 2014) (denying personal jurisdiction even where defendant had engaged in "three conversations, verbally or by email, with . . . principals or personnel in New York").  Even if these isolated communications could be construed as transacting business, none of the Amended Complaint's claims arise from them: the alleged communications post-date all of the alleged agreements except

the Harry Haft term sheet, to which BRON Studios USA is not party and about which the Plaintiffs draw no connection to the communications. *See* Am. Compl. ¶¶ 151-54.

### C. BRON Studios USA Did Not Agree to Submit to New York Jurisdiction for any of Plaintiffs' Claims

Finally, Plaintiffs assert that "[i]n various agreements at issue herein, one or more Defendants irrevocably submitted to the jurisdiction of this Court and waived any objection to the laying of venue in this District," (Am. Compl. ¶ 19), but the Amended Complaint itself belies any claim that BRON Studios USA submitted to New York jurisdiction. The only agreement that Plaintiffs allege BRON Studios USA entered into is the Greyhound term sheet, Am. Compl. ¶ 43, which does not contain any agreement to submit to, or to litigate in, New York courts. Instead, it identifies the "City of Toronto" as the non-exclusive forum for resolving disputes. Cloth Decl., Ex. A at 2.

Each of Plaintiffs' three attempts to satisfy New York's long-arm statute as to BRON Studios USA are therefore faulty, and the Amended Complaint must be dismissed against BRON Studios USA under Rule 12(b)(2). Because Plaintiffs have failed to satisfy New York's long-arm statute, the Court need not move to the second step of determining "whether asserting jurisdiction under that provision would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution." *Best Van Lines*, 490 F.3d at 242 (explaining that "due process" analysis is conducted "only if" jurisdiction exists under state law).

### POINT II

### THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AGAINST BRON STUDIOS USA AND JASON CLOTH FOR FAILURE TO STATE A CLAIM

The crux of Plaintiffs' allegations is that they advanced funds to Creative Wealth pursuant to Term Sheets under which Creative Wealth was allegedly obligated to repay such amounts, plus

interest, and a percentage of the financed films' net profits. Plaintiffs additionally claim that they entered into participation agreements with Creative Wealth for two of the films and a participation agreement with Bron Creative USA for another film.

Tellingly, beyond conclusory group pleading, Plaintiffs do not point to a single provision in any of the Term Sheets or Participation Agreements that either BRON Studios USA or Cloth breached. Indeed, as discussed below, neither party had *any* performance obligations to either of Plaintiffs under any of the alleged agreements. Nevertheless, Plaintiffs attempt to rope BRON Studios USA and Cloth into this action by asserting several baseless causes of action against them, including (i) breach of the Greyhound term sheet; (ii) three causes of action for an accounting in connection with the financings of Fonzo, Greyhound and Bombshell; (iii) conversion; and (iv) for alter ego liability against Cloth. All fail as a matter of law.

A.  BRON Studios USA and Cloth Had No Repayment Obligations
Under the Greyhound Term Sheet and Therefore Could Not Have Breached It

In their fourth cause of action, Plaintiffs claim that "Creative Wealth, Bron Creative, BRON Studios USA, and Cloth failed to perform their obligations under the Greyhound Term Sheet, including full repayment of the Greyhound Loan." Am. Compl. ¶ 105. This allegation, however, is contradicted by the Greyhound term sheet itself, which shows that neither BRON Studios USA nor Cloth were borrowers or had repayment obligations under it.

The Greyhound term sheet provides that Hudson LP will fund $3 million to Creative Wealth, which would in turn pay those funds, on behalf of a third entity, Bron Creative, to a fourth entity, Sony Pictures Worldwide Acquisitions Inc., which in turn was financing the film Greyhound. *See* Cloth Decl., Ex. A at 1. Thus, the Term Sheet does not provide for either BRON Studios USA or Cloth to receive any of the Hudson LP funding, either directly or indirectly. *See* Cloth Decl., Ex. A at 1. Because they are not recipients of the Hudson LP financing under the

Greyhound term sheet, Hudson LP lacks any basis for claiming BRON Studios USA and Cloth were obligated to make repayments.

Plaintiffs do not, and cannot, point to a single term in the Greyhound term sheet imposing any repayment obligations, indeed any performance obligations at all, on BRON Studios USA's or Cloth's part.  The only clauses in the term sheet that reference BRON Studios USA and Cloth are waterfalls specifying how Sony Pictures and Bron Creative will distribute "Facilitation Fees" and "Contingent Compensation," respectively.  *Id.*, Ex. A at 2.  In these waterfalls, BRON Studios USA and Cloth are not *payors*, they are as pro rata recipients *alongside* Hudson LP.  Notably, only one party to the Greyhound Term Sheet is referred to in the agreement as having "financial obligations": Creative Wealth, to whom Hudson LP advanced the funding.  *Id.*, Ex. A at 2.

Plaintiffs' claim against BRON Studios USA and Cloth for breach of the Greyhound Term Sheet therefore fail whether analyzed under New York or Ontario Law.  Indeed, "[a] claim for breach of contract must contain sufficient facts to establish six elements: (1) the nature of the contract; (2) the parties to the contract; (3) privity of contract between the plaintiff and defendant; (4) the relevant terms of the contract; (5) ***which term was breached***; and (6) ***the damages that flow from the breach***."  *Enercare Home & Com. Servs. Ltd. P'ship v. Grand Hvac Leasing Ltd.*, 2020 CarswellOnt 17003, 2020 ONSC 6946, at ¶14 (Ont. Sup. Ct. 2020) (emphasis added).

Importantly, "[a] plaintiff must establish a causal link between the alleged breach of contract and the damages allegedly suffered."  *Persaud v. Telus Corp.*, 2017 CarswellOnt 8934, 2017 ONCA 479, at ¶10 (Ont. App. Ct. 2017); *Braysan Props. Inc. "In Trust" v. Muchos*, 2022 CarswellOnt 9215, 2022 ONSC 3703, at ¶65 (Ont. Sup. Ct. 2022) ("The requirement for a causal link between the breach of contract and the damages suffered by the plaintiff is an essential element of a breach of contract claim.").

Given Plaintiffs' concession that it provided its funds to Creative Wealth (*see* Am. Compl. ¶ 43), and the fact that BRON Studios USA and Cloth had no performance obligations to Plaintiffs, Plaintiffs cannot establish that BRON Studios USA or Cloth breached *any* term of the Greyhound Term Sheet or that they caused any damages to Plaintiffs.

B. Plaintiffs' Accounting Claims Fail as a Matter of Law

Plaintiffs assert three causes of action for an accounting (*i.e.*, the second, fifth and eighth) in connection with the financings of Fonzo, Greyhound and Bombshell. In all three claims, Plaintiffs group-plead that they have a fiduciary relationship with "Defendants" and that "Defendants possess superior knowledge and unfettered access to information" relating to the financings, such that "Defendants" are required to account to Plaintiffs for all financial information relating to the films. *See* Am. Compl. ¶¶ 89-92, 109-11, 130-32.

Plaintiffs' do not state whether they assert their accounting claims under Ontario (the law governing the Greyhound term sheet) or New York law, but regardless of which law is applied, the claims fail. As an initial matter, a standalone cause of action for an accounting does not exist under Ontario law. *Paul v. Pizale*, 2011 CarswellOnt 4539, 2011 ONSC 3490, at ¶ 33 (Ont. Sup. Ct. 2011) ("An accounting is a remedy, rather than a cause of action.").[3]

Plaintiffs' accounting claims fare no better under New York law. "Under New York law, a plaintiff seeking an accounting, which is an equitable remedy, must allege both a fiduciary

---

[3] To the extent Plaintiffs claim that Nevada law applies to its accounting claims because BRON Studios USA is a Nevada corporation, the claim similarly fails under Nevada law, as an accounting is a remedy, not an independent cause of action. *Cueto-Reyes v. All My Sons Moving Co.*, 2010 WL 11579989, at *5 (D. Nev. 2010) ("An accounting is an equitable remedy, not an independent cause of action."); *W. Nevada Supply Co. v. Aneesard Mgmt., LLC*, 2011 WL 1118683, at *6 (D. Nev. 2011) (same).

relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant." *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 2019 WL 719252, at *4 (S.D.N.Y. 2019); *E. End Labs., Inc. v. Sawaya*, 79 A.D.3d 1095, 1096 (2d Dep't 2010) (dismissing accounting claim because the complaint's allegations "were insufficient to allege the existence of a relationship between the plaintiff and the defendants").

Here, Plaintiffs' allegations fail to establish that there was any fiduciary relationship between them, on one side, and BRON Studios USA or Cloth, on the other. To plead a fiduciary relationship, Plaintiffs must provide non-conclusory allegations of "special circumstances," because "a conventional business relationship, without more, is insufficient to create a fiduciary relationship." *Saul v. Cahan*, 153 A.D.3d 947, 949 (2d Dep't 2017) (first quoting *L. Magarian & Co. v. Timberland Co.*, 245 A.D.2d 69, 70 (1st Dep't 1997), then quoting *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 58 A.D.3d 6, 21 (2d Dep't 2008)). Plaintiffs have not come anywhere near this exacting standard.

First, the Greyhound term sheet does not create any fiduciary relationship between any Plaintiff and BRON Studios USA or Cloth. The term sheet does not give BRON Studios USA or Cloth "control" over Hudson LP nor obligate them to act "for the good of" Hudson LP; accordingly, it cannot meet the "special circumstances" requirement. *Saul*, 153 A.D.3d at 949 (quoting *L. Magarian*, 245 A.D.2d at 70). The term sheet provides—at most—for an arms-length arrangement that cannot give rise to a fiduciary relationship. *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 498 (S.D.N.Y. 2017) (stating that an "arms-length commercial transaction generally does not give rise to a fiduciary relationship"); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 679 (S.D.N.Y. 1991) ("Where parties deal at arms length in a commercial transaction, no relation

of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.").

Significantly, the Greyhound term sheet explicitly *disclaims* any special relationship between the parties, thereby preventing any claim of a fiduciary relationship between Hudson LP and any of Defendants:

> The ***Parties each acknowledge that they are independent contractors*** and that solely by entering into this Term Sheet, no partnership, joint venture, agency or employment relationship has or will be created by this Term Sheet. ***No party hereto shall have the right or authority to create or assume any obligations in any other Party's name or on any other Party's behalf,*** whether express or implied, or ***act or purport to act as any other Party's agent or legally empowered representative for any purpose whatsoever***, without the pother Party's prior written consent in each instance.

*See* Cloth Decl., Ex. A at 3 (emphasis added).  In New York, when a contract prevents a party from acting on behalf of the other without prior written consent, as the Greyhound term sheet does, "[t]his kind of non-agency relationship is not fiduciary in nature."  *RNK Cap. LLC v. Natsource LLC*, 76 A.D.3d 840, 841 (1st Dep't 2010).  The lack of fiduciary duty is further confirmed by the term sheet's language limiting the parties to nothing more than an "independent contractor" relationship. *Bd. of Managers of Highpoint Condo. v. E./W. Venture*, 278 A.D.2d 55, 55 (1st Dep't 2000).

Second, Plaintiffs cannot establish a fiduciary relationship with conclusory assertions that BRON Studios USA and Cloth had "superior knowledge and unfettered access" to the status of the films' finances.  Am. Compl. ¶¶ 90, 109, 130.  Under New York law, "a party's superior knowledge does not itself create a fiduciary relationship."  *Green v. Beer*, 2007 WL 576089, at *3 n.8 (S.D.N.Y. 2007); *accord Bd. of Managers of Highpoint Condo.*, 278 A.D.2d at 56.  Instead, that superior knowledge must be paired with "requisite" allegations of a "high degree of dominance and reliance," which "must have existed prior to the transaction giving rise to the

15

alleged wrong." *Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v. Salomon Bros. Int'l*, 251 A.D.2d 137, 138 (1st Dep't 1998). Plaintiffs however offer no such allegations, nor any allegations that either BRON Studios USA or Cloth (in his personal capacity) intended to undertake any fiduciary duties to Plaintiffs. For these reasons, too, the Amended Complaint fails to allege a fiduciary relationship on their part. *Russell Pub. Grp., Ltd. v. Brown Printing Co.*, 2014 WL 1329144, at \*5 (S.D.N.Y. 2014) (rejecting allegation that "[defendant]'s superior knowledge of the printing industry and offer to serve in an advisory capacity gave rise to a fiduciary duty" because there was no allegation that the defendant "intended to undertake any fiduciary duty or that its relationship with [plaintiff] amounted to more than an arm's length business transaction").

Because there is no fiduciary relationship between Plaintiffs and BRON Studios USA or Cloth, the accounting claims against them must be dismissed. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) ("Because, as explained above, Plaintiffs have failed to allege the existence of a fiduciary or otherwise confidential relationship with SPS and M & T, much less the SPS Affiliates, the accounting claim merits dismissal."); *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010) ("Stadt's claim of breach of fiduciary duty and his request for an accounting fail because the Complaint does not allege adequate facts to suggest that the parties were in a relationship of sufficient trust and confidence to create either a fiduciary duty or a confidential relationship.").

C.  Plaintiffs' Conversion Claim Fails

Hudson LP's eleventh cause of action for conversion of money against all "Defendants" fails as a matter of law[4] as against BRON Studios USA and Cloth for three independent reasons.

First, Hudson LP has failed to establish the core requirement of any conversion, to "show that [BRON Studios USA or Cloth] exercised an *unauthorized dominion* over the thing in question to the exclusion of the [P]laintiff[s'] rights." *Martinez v. Capital One, N.A.*, 863 F. Supp. 2d 256, 266 (S.D.N.Y. 2012), *aff'd & remanded*, 742 F.3d 520 (2d Cir. 2013) (emphasis added).

As to Cloth, there is not even a single non-conclusory allegation that he personally possessed Hudson LP's funds. *Barlow v. Skroupa*, 173 N.Y.S.3d 98, 108 (Sup. Ct. N.Y. Cty. 2022) (dismissing conversion claim against individuals because "plaintiffs do not allege that . . . those specific funds are in [the individual defendants'] possession"); *City of N.Y. v. 611 W. 152nd St., Inc.*, 273 A.D.2d 125, 127 (1st Dep't 2000) ("[T]here is no allegation that defendant ever had ownership, possession or control over the disbursed money, and there is no evidence that the payments were made out of a specifically identifiable fund.").

As to BRON Studios USA, even assuming that Hudson LP alleged possession, the Amended Complaint fails to allege that any such funds held were "subject to an obligation to be

---

[4] Plaintiffs have not invoked foreign law, nor established that any conflict of law exists, regarding the conversion claim.  Therefore, New York law controls.  *Comprehensive Habilitation Servs., Inc. v. Com. Funding Corp.*, 2009 WL 935665, at *10 (S.D.N.Y. 2009) ("If no conflict is found between the law of the forum and any other jurisdiction whose law is invoked, then the Court should apply the law of the forum.").  Indeed, conversion claims under Ontario and Nevada law, like New York law, provides that conversion claims apply only to property that is identifiable or specific, not commingled funds, and may not be based upon an alleged breach of contract.  *See Enercare Home*, 2020 CarswellOnt 17003, 2020 ONSC 6946, at ¶25; *Carillion Canada Holdings Inc. (Re)*, 2021 CarswellOnt 9193, 2021 ONCA 468, at ¶12 (Ont. App. Ct. 2021); *Rothman v. Tabrizi*, 2008 CarswellOnt 8288 (Ont. Sup. Ct. 2008); *Dunham Tr. Co. v. Wells Fargo Bank, N.A.*, 2019 WL 5684172, at *4 (D. Nev. 2019); *Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021).

returned" directly to Hudson LP "or to be otherwise treated in a particular manner" by BRON Studios USA. *McBride v. KPMG Int'l*, 135 A.D.3d 576, 579-80 (1st Dep't 2016). As noted above, the Term Sheets do not provide for any payments by Hudson LP to BRON Studios USA, directly or indirectly, let alone any repayment obligations on BRON Studios USA's part.

At most, the Amended Complaint states that Hudson LP provided funds to Creative Wealth, which, consistent with Hudson LP's contractual expectations, proceeded to loan those funds to two alleged *subsidiaries* of BRON Studios USA, Fonzo, LLC and Harry Haft Films, LLC. Am. Compl. ¶¶ 31, 70. Under those circumstances, BRON Studios USA has no obligation to return those funds to Hudson LP directly. As the Amended Complaint concedes, BRON Studios USA's repayment obligations, if any, would be "to repay amounts owing to Creative Wealth." *Id.* ¶ 153. Thus, Hudson LP had no "possessory right" to demand return of any alleged funds held by BRON Studios USA. *See McBride*, 135 A.D.3d at 580 (explaining that Bernie Madoff investors could not assert conversion claims against Madoff's banks, because "Plaintiffs had no possessory right or interest in [Madoff's] accounts at JPMorgan and BNY; rather, [Madoff] had the right and interest in those accounts").

Nor can Plaintiff rely on allegations that Creative Wealth failed to send funds to production companies to claim conversion against *BRON Studios USA*. Am. Compl. ¶¶ 79-80, 157. Plaintiff does not allege that any of these allegedly misused funds were in BRON Studios USA's possession; to the contrary, the Amended Complaint alleges that Hudson LP *intended* for Creative Wealth to provide funds to BRON Studios USA's affiliates. Am. Compl. ¶¶ 31, 70. Regardless, "[w]here, as here, a plaintiff alleges the re-conversion of funds by third parties, the complaint must allege that the recipient had reason to know the funds had been unlawfully converted." *Citadel*

18

*Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000). No such allegations is made against BRON Studios USA.

<u>Second</u>, Hudson LP's conversion claim fails for the independent reason that it does not allege, as required, that BRON Studios USA or Cloth converted any specific, identifiable fund. "Where, as here, a plaintiff alleges that a defendant converted money, the money 'must be specifically identifiable . . . .'" *McBride*, 135 A.D.3d 580 (quoting *Rep. of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st Dep't 1995)); *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) ("Because plaintiffs do not claim ownership of a 'specifically identifiable, segregated [$1 million],' they fail to state a claim for conversion of money.").

Here, Hudson LP claims that "[u]pon information and belief, Defendants are in possession of Hudson LP's funds" which "it deposited with Creative Wealth." Am. Compl. ¶¶ 148-49. In an attempt to mold its allegations into a conversion claim, it asserts that "[t]he specific and identifiable funds are those monies which Hudson LP deposited with Creative Wealth, which were not spent on the pre-production, production, post-production, and delivery of the above-referenced films." Am. Compl. ¶ 157. But this general statement fails both the "specific" and "identifiable" requirements.

*Not Specific:* Hudson LP's allegation is not specific because it fails to specify "an exact amount of money" that was allegedly converted. *Bryant v. Comm'r of Soc. Sec.*, 2015 WL 6758094, at *7 (S.D.N.Y. 2015). Because Hudson LP is generally asserting "that '[a]ll or some of [its] investment money was converted," its conversion claim fails as a matter of law. *Rose v. Rahfco Mgmt. Grp.*, 2014 WL 7389900, at *6-7 (S.D.N.Y. 2014).

*Not Identifiable:* Hudson LP asserts that it provided money across multiple different advances to Creative Wealth, that Creative Wealth misused an unspecified amount of those funds

derived from one or more unspecified advances, and that upon information and belief, one or more "Defendants" are in possession of those or other funds that Hudson LP claims to belong to it. These allegations clearly cannot form the basis of a conversion claim. Indeed, courts in this Circuit regularly dismiss conversion claims pursuant to Fed. R. Civ. P. 12(b)(6) where "the complaint does not seek a specific amount of money converted from a particular account." *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, 2019 WL 1084777, at *10 (E.D.N.Y. 2019); *see also See Double Alpha, Inc. v. Mako Partners, L.P.*, 2000 WL 1036034, at *4 (S.D.N.Y. 2000) (dismissing conversion claim under New York law because "[a]lthough plaintiff alleges defendants owe it the specific sum of $610,674-the amount [] invested . . . that has not been returned-it does not claim ownership to a specific, identifiable, segregated sum of money"); *Glob. View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*, 288 F. Supp. 2d 473, 480 (S.D.N.Y. 2003) (dismissing conversion claim that (i) merely referred to "unspecified 'monies and assets . . . in an amount in excess of $75,000"; (ii) did not specify "an identifiable fund or otherwise segregated amount"; and (iii) did not describe "the alleged transfer or transfers from which the Court could infer a specifically identified fund of money").

Even assuming that Hudson LP had alleged these funds were identifiable when in Creative Wealth's possession (Hudson LP has not), the Amended Complaint provides no basis for inferring that the funds were identifiable when, and if, they came into any other Defendants' possession. *McBride*, 135 A.D.3d at 580 ("Even if, arguendo, McBride's money was specifically identifiable when she sent it to Beacon Associates, there is no indication that Beacon Associates segregated it when it sent investors' money to Madoff.").

Third, Hudson LP's conversion claim fails because it is based upon alleged breaches of contracts (*i.e.*, the Term Sheets). Hudson LP cannot repackage its breach of contract allegations

as a tort claim. Under well-settled New York law, a conversion claim cannot be maintained where the alleged damages are based on a breach of a contract. *See Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884 (1st Dep't 1982) (dismissing plaintiff's conversion claim because the action for conversion was "merely being sought for breach of contract"); *Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267, 275 (E.D.N.Y. 2021) ("[C]onversion cannot enforce a simple obligation to pay money."); *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993) (stating that "a tort claim will not arise 'where plaintiff is essentially seeking enforcement of the bargain'"). The claim therefore fails as a matter of law.

Accordingly, the conversion claim should be dismissed.

D. <u>Plaintiffs Have Failed to State a Claim for Alter Ego Liability Against Jason Cloth</u>

Hudson LP's twelfth cause of action seeks to hold Jason Cloth personally liable for Creative Wealth's alleged breaches of contract under a theory of alter ego liability. But it is unable to do so under the stringent standards imposed by Ontario law.[5] Ontario courts treat the corporate form seriously and will "only pierce the corporate veil in exceptional circumstances." *Unique Lighting v. Green Servs.*, 2019 CarswellOnt 12390, 2019 ONSC 4438, at ¶59 (Ont. Sup. Ct. 2019). "Typically, the corporate veil is pierced when the company is incorporated for an illegal, fraudulent or improper purpose" or when "those in control expressly direct a wrongful thing to be done." *Id.* That is, "courts will disregard the separate legal personality of a corporate entity where it is completely dominated and controlled and being used as a shield for fraudulent or improper conduct." *Id.* (internal citations and quotation marks omitted); *see, e.g.*, *Pita Royale Inc. (Aroma*

---

[5] "Under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 401 (S.D.N.Y. 2013). Because Hudson LP seeks to disregard the corporate form of Creative Wealth—an Ontario corporation (see Cloth Decl. ¶ 3)—and impose individual liability on Cloth, Ontario law applies. *Id.*

*Taste of the Middle E.) v. Buckingham Props. Inc.*, 2019 CarswellOnt 8106, 2019 ONCA 439, at ¶33 (Ont. App. Ct. 2019) ("In this case there was no evidence that the [corporation] was incorporated as a sham or was being used as a shield for fraudulent or improper conduct. If the trial judge's analysis were accepted, then any time a corporation engaged in a tort its officers and directors would be personally liable. In summary, this is not one of those exceptional cases where the corporate veil should be pierced to impose liability on an officer or director.").

Hudson LP's alter ego claim falls far short of these standards. All Hudson LP offers is a threadbare recitation of what they believe are the elements of such a claim: that Cloth is an "officer and owner of Creative Wealth"; that he "exercises complete domination and control" of the company; that he operates the company without "recognition of corporate formalities"; and that he used the company to "perpetrate a wrong and injustice." Am. Compl. ¶¶ 160-63.

But "[t]hese purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard." *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003); *Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*, 2009 WL 3076094, at *3 (S.D.N.Y. 2009) ("To state a prima facie claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are insufficient."); *TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*, 2017 WL 2627912, at *3 (S.D.N.Y. 2017) (finding complaint failed to allege personal liability because "the Complaint has made only a conclusory assertion that the corporate defendants are alter egos of the individual defendants").

Accordingly, Plaintiffs' claim for alter ego liability against Cloth should be dismissed.

**SEVERAL OF THE COMPLAINT'S CAUSES OF ACTION FAIL
AS AGAINST BRON CREATIVE USA AND CREATIVE WEALTH**

A.  Plaintiffs' Accounting Claims Fail Against Bron Creative USA and Creative Wealth

As discussed above, the second, fifth and eighth causes of action for accountings of Fonzo, Greyhound and Bombshell fail to sufficiently allege a fiduciary relationship between Plaintiffs and any parties to the relevant term sheets, and such reasoning applies with equal force to those claims as against Bron Creative USA and Creative Wealth.  That is, the term sheets cannot create a fiduciary relationship between Plaintiffs, on the one hand, and Bron Creative USA or Creative Wealth, on the other, and Defendants' purported "superior knowledge" of the films' finances does not give rise to such a relationship either.  Thus, the accounting claims fail to state a claim against Bron Creative USA or Creative Wealth.

To the extent Plaintiffs base their accounting claims against Bron Creative USA and Creative Wealth on the Participation Agreements—which Plaintiffs allege require Bron Creative USA and Creative wealth to account to Plaintiffs in connection with the films' proceeds—the accounting claims are impermissibly duplicative of Plaintiffs' third, sixth and ninth causes of action, which already seek that exact relief (*i.e.*, specific performance of the Participation Agreements' alleged accounting provisions).  Indeed, Plaintiffs' specific performance claims assert that, under the Participation Agreements, (i) Creative Wealth is required to account to Hudson LP in connection with Fonzo; (ii) Bron Creative USA is required to account to Hudson LP in connection with Greyhound; and (iii) Creative Wealth is required to account to both Plaintiffs in connection with Bombshell.  *See* Am. Compl. ¶¶ 96-101, 115-20, 136-41.

"New York courts have dismissed equitable accounting claims where, as here, the plaintiff asserts a breach of contract claim seeking similar relief."  *Associated Mortg. Bankers, Inc. v.*

*Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 340 (E.D.N.Y. 2016); *see also Ellington Credit Fund*, 837 F. Supp. 2d at 207 ("Even if Plaintiffs sufficiently demonstrated that they were in a fiduciary relationship with [defendants], an equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter."); *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 202 (E.D.N.Y. 2007) (dismissing accounting claim because "no purpose would be served by treating Plaintiff's equitable accounting claim as an additional, and duplicative, action at law").

Similarly, Plaintiffs cannot establish that they have no adequate remedy at law if their accounting claims are dismissed—a critical element of an accounting claim—as they have asserted four causes of action for breach of the Term Sheets (*i.e.*, the first, fourth, seventh, and tenth) and will undoubtedly seek discovery concerning their alleged damages if they were to prevail on their claims. *Associated Mortg. Bankers*, 159 F. Supp. 3d at 340 (dismissing accounting claim and reasoning that such a claim cannot coexist with a breach of contract claim covering the same subject matter "because a plaintiff would be able to obtain the information and damages through discovery of his or her breach of contract claim, and thus, he or she has an adequate remedy at law"); *Banks*, 475 F. Supp. 2d at 202 ("Because Plaintiff has sought money damages in his breach of contract claim, and because discovery as to the measure of damages would be available to him if he were to prevail on that claim, he can obtain all the information he seeks in his existing claim at law.").

Because the accountings claims fail as a matter of law against all Defendants, the second, fifth and eighth causes of action should be dismissed.

B.  The Conversion Claims Fails Against Bron Creative USA and Creative Wealth

The conversion claim fails as to Bron Creative USA and Creative Wealth for several of the same reasons that it fails as against BRON Studios USA and Cloth: there is no allegation that Bron Creative USA or Creative Wealth converted specifically identifiable funds, and the claim is impermissibly based upon alleged breaches of contract.  The conversion claim therefore fails against all Defendants and should be dismissed in its entirety.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Defendants respectfully request that the Court (i) dismiss the Amended Complaint in its entirety as against BRON Studios USA and Jason Cloth; and (ii) dismiss the second, fifth, eighth and eleventh causes of action as against Bron Creative USA and Creative Wealth.

Dated: New York, New York
        September 30, 2022

BOIES SCHILLER FLEXNER LLP

By: _ /s/ Joshua I. Schiller_____
        Joshua I. Schiller
        Benjamin Margulis
55 Hudson Yards
New York, New York 10001
(212) 446-2300
*Counsel for Defendant*
*BRON Studios USA, Inc.*

HERRICK, FEINSTEIN LLP

By: _ /s/ William R. Fried_____
        William R. Fried, Esq.
        Samuel J. Bazian, Esq.
2 Park Avenue
New York, New York 10016
(212) 592-1400
*Attorneys for Defendants*
*Bron Creative USA, Corp., Creative Wealth*
*Media Finance Corp. and Jason Cloth*