**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HUDSON PRIVATE LP and HUDSON PRIVATE CORP., <br><br> Plaintiffs, <br><br> vs. <br><br> BRON STUDIOS USA, INC., BRON CREATIVE USA, CORP., CREATIVE WEALTH MEDIA FINANCE CORP., and JASON CLOTH, <br><br> Defendants. | Civ. Action No. 7:21-cv-08259 |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO THE MOTIONS TO DISMISS**

---

**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, New York 10017
Tel: (212) 655-3500
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ............................................................................................2

ARGUMENT ................................................................................................................2

  I.  THE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
     SHOULD BE DENIED ...........................................................................................2

    A. Bron Studios' Pre-Motion Letter Did Not Raise a Personal Jurisdiction Defense ........2

    B. Plaintiff is Entitled to Supplement its Jurisdictional Allegations ..................................3

    C. The Court Has Personal Jurisdiction Over Bron Studios ................................................3

       1. Legal Standard ........................................................................................................3

       2. The Court has General Jurisdiction over Bron Studios ...........................................4

       3. The Court has Specific Jurisdiction over Bron Studios ..........................................5

          a.  CPLR § 302(a)(1) ...........................................................................................5

          b.  CPLR § 302(a)(3) ...........................................................................................7

       4. The Exercise of Personal Jurisdiction Does Not Violate Due Process ...................9

       5. In the Alternatively, the Court Should Permit Jurisdictional Discovery ................9

  II.  THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE
      DENIED ...............................................................................................................10

    A. Breach of Contract Claims Against Bron Studios and Cloth .......................................10

    B. Accounting Claims .......................................................................................................13

       1. Accounting Claims Against All Defendants ..........................................................13

       2. Accounting Claims Against Bron Studios and Cloth in Particular ........................16

    C. Conversion Claims .......................................................................................................17

       1. Conversion Claims Against All Defendants ..........................................................17

  2. Conversion Claims Against Bron Studios and Cloth in Particular ........................22

 D. Alter Ego Claim Against Cloth ......................................................................................23

CONCLUSION ...........................................................................................................................25

**Cases**                                                                          **Page(s)**

*798839 Ontario Ltd. v. Platt*,
    2016 CarswellOnt 9896 (Ont. Ct. App. 2016) ........................................................ 12

*1828445 Ontario Ltd. v. Guerra*,
    2014 CarswellOnt 11236 (Ont. Super. Ct. Justice June 3, 2014) ........................... 24

*A.I. Trade Fin., Inc. v. Petra Bank*,
    989 F.2d 76 (2d Cir. 1993) ..................................................................................... 4

*ADP Inv. Commc'n Servs., Inc. v. In House Att'y Servs., Inc.*,
    390 F.Supp.2d 212 (E.D.N.Y. 2005) ................................................................ 18, 21

*Alliance of Am. Insurers v. Cuomo*,
    854 F.2d 591 (2d Cir. 1988) ................................................................................. 10

*Bamira v. Greenberg*,
    256 A.D.2d 237 (1st Dep't 1998) .......................................................................... 12

*Banco Cent. de Paraguay v. Paraguay Humanitarian Found., Inc.*,
    2005 WL 1561504 (S.D.N.Y. June 30, 2005) ....................................................... 18

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002) ................................................................................... 9

*Bankers Tr. Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro*,
    187 A.D.2d 384 (1st Dep't 1992) .......................................................................... 20

*Beacon Enter., Inc. v. Menzies*,
    715 F.2d 757 (2d Cir. 1983) ................................................................................... 5

*Berman v. Rotterman*,
    2011 WL 2149431 (W.D.N.Y. June 1, 2011) .................................................. 15, 22

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ................................................................................... 6

*Blake v. Great Northern Fin. Corp.*,
    1978 CarswellOnt 383 (Ont. Sup. Ct. Jan. 4, 1978) ........................................ fn 14

*Brook Automotive v. Correiro*,
    2013 CarswellOnt 555 (Ont. Super. Ct. Justice Jan. 25, 2013) ............................ 11

*Buari v. City of New York*,
530 F.Supp.3d 356 (S.D.N.Y. 2021) ................................................................. 3

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ......................................................................................... 9

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F.Supp.3d 342 (S.D.N.Y. 2014) ................................................................. 3

*Capitol Records, LLC v. VideoEgg, Inc.*,
611 F.Supp.2d 349 (S.D.N.Y. 2009) ................................................................ 8

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ............................................................................ 4

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
123 F.Supp.2d 133 (S.D.N.Y. 2000) .............................................................. 19

*Clay Paky, S.p.A. v. Vari-Lite, Inc.*,
2000 WL 9777709, at *6 (S.D.N.Y. July 14, 2000) ........................................ 5

*D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
29 N.Y.3d 292 (2017) ...................................................................................... 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ......................................................................................... 4

*DiFolco v. MSNBC Cable LLC*,
622 F.3d 104 (2d Cir. 2010) ........................................................................ fn 14

*Eades v. Kennedy, PC Law*,
799 F.3d 161 (2d Cir. 2015) ............................................................................ 6

*Energy Brands, Inc. v. Spiritual Brands, Inc.*,
571 F.Supp.2d 458 (S.D.N.Y. 2008) ................................................................ 9

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006) .......................................................................... 10

*Fischbarg v. Doucet*,
9 N.Y.3d 375 (2007) ......................................................................................... 6

*Fletcher v. Dakota, Inc.*,
99 A.D.3d 43 (1st Dep't 2012) ....................................................................... 23

*Freasier v. Mulderig*,
2008 WL 5250370 (S.D.N.Y. Dec.15, 2008) ................................................................ 3

*Giarla v. Coca-Cola Co.*,
2021 WL 1110397 (W.D.N.Y. Mar. 23, 2021) ................................................... fn 23

*Glob. View Ltd. Venture Capital v. Great Cent. Basin Expl., LLC*,
288 F.Supp.2d 473 (S.D.N.Y. 2003) ........................................................................ 19

*GMAC Comm. Credit, LLC v. Dillard Dep't Stores, Inc.*,
198 F.D.R. 402, 406 (S.D.N.Y. 20001) ...................................................................... 5

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ................................................................. 4

*Greenwald v. Ridgevale Inc.*,
2016 CarswellOnt 6968 (Ont. Super. Ct. Justice May 4, 2016) ............................... 24

*Holt v. Feigenbaum*,
52 N.Y.2d 291 (1981) .............................................................................................. 11

*Hubei Jingzhou Yizhuo Indust. Co., Ltd. v. JNJ Rest. Supp., Inc.*,
2010 WL 5174337 (S.D.N.Y. Dec. 9, 2010) .............................................................. 2

*In re MF Global Holdings Ltd. Inv. Litig.*,
998 F.Supp.2d 157 (S.D.N.Y. 2014) ........................................................................ 21

*Jonas v. Estate of Leven*,
116 F.Supp.3d 314 (S.D.N.Y. 2015) .......................................................................... 3

*Kreutter v. McFadden Oil Corp.*,
522 N.E.2d 40 (1988) ............................................................................................... 6

*Lehman Bros. Com. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*,
179 F.Supp.2d 118 (S.D.N.Y. 2000) ................................................................... 13, 16

*Leon v. Shmukler*,
992 F.Supp.2d 179 (E.D.N.Y. 2014) ......................................................................... 9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) ................................................................................... 4, 9

*Light v. Taylor*,
2007 WL 274798 (S.D.N.Y. Jan. 29, 2007) ............................................................. 11

*MacDermid, Inc. v. Deiter*,
  702 F.3d 725 (2d Cir. 2012) .................................................................... 3

*Marcus v. Hemphill Harris Travel Corp.*,
  193 A.D.2d 543 (1st Dep't 1993) ........................................................... 20

*Martinez v. Capital One, N.A.*,
  863 F.Supp.2d 256 (S.D.N.Y. 2012) ...................................................... 18

*McBride v. KPMG Int'l*,
  135 A.D.3d 576 (1st Dep't 2016) ........................................................... 19

*Meese v. Miller*,
  79 A.D.2d 237 (4th Dep't 1981) ............................................................ 20

*Meskunas v. Auerbach*,
  2019 WL 719514 (S.D.N.Y. Feb. 20, 2019) .......................................... 15

*Micro Fines Recycling Owego LLC v. Ferrex Engin., Ltd.*,
  585 F.Supp.3d 289 (N.D.N.Y. Feb. 9, 2022) ..................................... fn 23

*Minnie Rose LLC v. Yu*,
  169 F.Supp.3d 504 (S.D.N.Y. 2016) ........................................................ 6

*Mitchell v. Lewis*,
  2016 CarswellOnt 19090 (Ont. Ct. App. 2016) ..................................... 24

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
  14 F.Supp.3d 191 (S.D.N.Y. 2014) ........................................................ 15

*Newbro v. Freed*,
  409 F.Supp.2d 386 (S.D.N.Y. 2006) ...................................................... 20

*Obeid v. Mack*,
  2016 WL 1069678 (S.D.N.Y. Mar. 17, 2016) .......................................... 7

*Oral-B Labs., Inc. v. Mi-Lor Corp.*,
  611 F.Supp. 460 (S.D.N.Y. 1985) ............................................................ 5

*Pan-Am. Life Ins. Co. v. Antarctica Cap. Mgmt., LLC*,
  2022 WL 992840 (S.D.N.Y. Mar. 31, 2022) ................................... 14, 17

*Parker Waichman Alonso LLP v. Orlando Firm, P.C.*,
  2010 WL 1956871 (S.D.N.Y. May 14, 2010) ....................................... 8, 9

*Partner Reins. Co. Ltd. v. RPM Mortg., Inc.*,
   2020 WL 6690659 (S.D.N.Y. Nov. 13, 2020) ................................................ fn 23

*Penguin Group (USA) Inc. v. American Buddha*,
   609 F.3d 30 (2d Cir. 2010) ........................................................................ 7

*Petrone v. Davidoff Hutcher & Citron, LLP*,
   150 A.D.3d 776 (2d Dep't 2017) .............................................................. 19, 20

*Ramiro Aviles v. S & P Global, Inc.*,
   380 F.Supp.3d 221 (S.D.N.Y. 2019) ......................................................... 7

*Rose v. Rahfco Mgmt. Grp.*,
   2014 WL 7389900 (S.D.N.Y. Dec. 15, 2014) ............................................ 19

*Roxx Alison Ltd. v. Shutle, Inc.*,
   73 Misc. 3d 1222(A) (Sup. Ct. N.Y. Cnty. 2021) ..................................... 23

*Simone v. Daley*,
   1999 CarswellOnt 551 (Ont. Ct. App. Mar. 1, 1999) ............................... fn 14

*Stratagem Dev. Corp. v. Heron Int'l N.V.*,
   153 F.R.D. 535 (S.D.N.Y. 1994) .............................................................. 10

*Thys v. Fortis Sec. LLC*,
   74 A.D.3d 546 (1st Dep't 2010) ............................................................... 19

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
   2017 WL 3610584 (S.D.N.Y. July 26, 2017) ............................................ 12

*Van Syckle v. C.L. King & Assocs., Inc.*,
   822 F.Supp. 98 (N.D.N.Y 1993) ............................................................... 20

*Weingarten v. Warren*,
   753 F.Supp. 491 (S.D.N.Y. 1990) ............................................................ 22

*Wildenstein v. 5H & Co., Inc.*,
   97 A.D.3d 488 (1st Dep't 2012) ............................................................... 21

*Wright v. Carter*,
   712 F. App'x 80 (2d Cir. 2018) ................................................................ 11

**Rules**

CPLR § 301.................................................................................................. 1, 4, 5

CPLR § 302..................................................................................................*passim*

Federal Rule of Civil Procedure 12(b)........................................................3, 15, fn 14

Plaintiffs Hudson Private LP ("Hudson LP") and Hudson Private Corp. ("Hudson Corp." and together with Hudson LP, "Hudson" or "Plaintiffs"), by their undersigned counsel, respectively submit this memorandum of law in opposition to defendants Bron Studios USA, Inc. ("Bron Studios"), Bron Creative USA, Corp. ("Bron Creative" and together with Bron Studios, "Bron"), Creative Wealth Media Finance Corp. ("Creative Wealth"), and Jason Cloth's ("Cloth" and together with Creative Wealth, and Bron, "Defendants") joint motion to dismiss, in part, the Amended Complaint.

## PRELIMINARY STATEMENT

Defendants' motion to dismiss should be denied in its entirety.

First, Bron Studios' request to be dismissed from this action based on lack of personal jurisdiction fails for procedural and substantive reasons. Procedurally, Bron Studios did not comply with this Court's pre-motion conference requirement because, until filing this motion, Bron Studios had only said it would seek to move to compel arbitration; Bron Studios did not say it would seek dismissal for lack of personal jurisdiction. Bron Studios thus deprived Plaintiffs both of notice of this alleged pleading deficiency as well as of an opportunity to supplement Plaintiffs' jurisdictional allegations. Substantively, the Amended Complaint sufficiently alleges both general personal jurisdiction under CPLR § 301 and specific personal jurisdiction under CPLR § 302, and the exercise of personal jurisdiction in this case would not violate due process. At the very least, Plaintiffs have made a "sufficient start" towards establishing personal jurisdiction over Bron Studios, and the Court should therefore allow Plaintiffs to take limited, targeted jurisdictional discovery of Bron Studios' connections to New York.

Second, Defendants' various attacks on the sufficiency of Plaintiffs' causes of action are based on incomplete information and on ignoring the relevant allegations in the Amended

Complaint as well as the plain language of the parties' relevant agreements. Defendants are wrong on the law with respect to each cause of action and rely on distinguishable, inapplicable authorities. Plaintiffs should be permitted to move forward with and seek discovery on each of their causes of action against Defendants.

## STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to the Amended Complaint ("Compl.") and the Declaration of Christopher Conover ("Conover Dec.") for a recitation of the facts relevant to the motion.[1]

## ARGUMENT

### I. THE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION SHOULD BE DENIED

#### A. Bron Studios' Pre-Motion Letter Did Not Raise a Personal Jurisdiction Defense

The Individual Practices of Judge Cathy Seibel require a pre-motion conference with the Court prior to filing a motion to dismiss, which conference is requested by a party's submission of a letter "setting forth the basis for the anticipated motion."[2] Bron Studios did *not* request a pre-motion conference, and none was held, concerning the relief that Bron Studios now seeks – dismissal based upon an alleged lack of personal jurisdiction. Instead, on December 8, 2021, Bron Studios *only* requested a conference "in connection with a proposed motion for an order to compel arbitration of all claims against Bron Studios." (Dkt. 20).

Bron Studios' failure to comply with the pre-motion conference requirement warrants denial of its motion. *See Hubei Jingzhou Yizhuo Indust. Co., Ltd. v. JNJ Rest. Supp., Inc.*, No. 10-

---

[1] Defendants' joint memorandum of law in support of their motion to dismiss (ECF 47) will be cited herein as "Def. Mem."

[2] CS Seibel individual practices v10 eff 020320 FINAL.pdf (uscourts.gov)

cv-2642, 2010 WL 5174337, at *3 (S.D.N.Y. Dec. 9, 2010) (motion to drop defendants denied where plaintiff failed to comply with pre-motion conference requirement); *Freasier v. Mulderig,* No. 87-cv-6327, 2008 WL 5250370, at *4 (S.D.N.Y. Dec.15, 2008) (cross-movant "did not submit a pre-motion letter pursuant to [the court's] Individual Practices ... [or] obtain permission to file ... a motion").

## B.      Plaintiff is Entitled to Supplement its Jurisdictional Allegations

If Bron Studios had challenged personal jurisdiction in its pre-motion letter, Plaintiffs would have supplemented its jurisdictional allegations in its subsequent Amended Complaint. Stated differently, Plaintiffs were not on notice of such alleged pleading deficiency. However, because Bron Studios failed to comply with the Court's requirements, Plaintiffs respectfully request that the Court grant them leave to amend their pleadings to replead the personal jurisdiction issue, *Buari v. City of New York*, 530 F.Supp.3d 356, 411 (S.D.N.Y. 2021) (granting leave to replead conspiracy claim where defendants' pre-motion letter did not address such claim but they then moved to dismiss it), or simply consider the supplemental allegations submitted herewith via declaration. *Jonas v. Estate of Leven*, 116 F.Supp.3d 314, 323 (S.D.N.Y. 2015) (finding when jurisdictional facts are in dispute, "the district court may consider materials outside the pleadings, including affidavits and other written materials").

## C.      The Court Has Personal Jurisdiction Over Bron Studios

### 1.      Legal Standard

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F.Supp.3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). "Because the Court has not held an evidentiary hearing on this issue,

Plaintiff need only make a prima facie showing of jurisdiction through affidavits and supporting materials to satisfy this burden." *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-cv-3673, 2012 WL 123989, at *3 (S.D.N.Y. Jan. 3, 2012).

The Court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to do the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").

"District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is a statutory basis for exercising personal jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process." *BWP Media*, 69 F.Supp.3d at 349 (quotation marks and citations omitted). In a federal question case, the district court "applies the forum state's personal jurisdiction rules, unless a federal statute specifically provides for national service of process." *Id.* at 350 (quotation marks, alteration, and citation omitted). Jurisdiction comports with due process if "the defendant has certain minimum contacts with the [s]tate such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quotation marks, alterations, and citation omitted).

2.  The Court has General Jurisdiction over Bron Studios

New York's CPLR § 301 provides general jurisdiction over a non-domiciliary defendant where it is "engaged in such a continuous and systematic course of doing business here as to

warrant a finding of [its] presence in this jurisdiction." *Beacon Enter., Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir. 1983).

Bron Studios has an office in New York (Conover Dec., Ex. 1, Ex. 2), employs people in New York (Conover Dec., Ex. 3), generates millions of dollars from the sales of tickets to its movies in New York (Conover Dec., Ex. 4), solicits financing from New York (Conover Dec., ¶¶ 14 – 16, 22), and has engaged New York-based investment bankers, financing advisors, and marketing consultants. (Conover Dec., Ex. 9). Therefore, Bron Studios is "doing business" in New York and is subject to personal jurisdiction. *Clay Paky, S.p.A. v. Vari-Lite, Inc.*, No. 99-cv-11401, 2000 WL 9777709, at *6 (S.D.N.Y. July 14, 2000) (Texas corporation with employees working from New York office was "doing business" here); *GMAC Comm. Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.D.R. 402, 406 (S.D.N.Y. 2001) (maintaining office in New York sufficient for "doing business" finding); *Oral-B Labs., Inc. v. Mi-Lor Corp.*, 611 F.Supp. 460, 462 (S.D.N.Y. 1985) (personal jurisdiction pursuant to CPLR § 301 existed over corporation whose principal shareholder/sales manager maintains office in New York, and which had $300,000 of sales in the SDNY).

3.  The Court has Specific Jurisdiction over Bron Studios

New York's long-arm statute provides for specific jurisdiction under CPLR § 302. Section 302(a)(1) provides that a court may exercise personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." (N.Y. C.P.L.R. § 302(a)(1)).

a.  CPLR § 302(a)(1)

The two requirements for jurisdiction under CPLR § 302(a)(1) are: "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that

business activity." *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (internal quotation omitted). A claim arises from business activity "if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). "[A]n articulable nexus or substantial relationship exists where at least one element arises from the New York contacts rather than every element of the cause of action pleaded." *D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 299 (2017).

"Section 302(a)(1) is a 'single act' statute: '[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Minnie Rose LLC v. Yu*, 169 F.Supp.3d 504, 514 (S.D.N.Y. 2016) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (1988)).

Here, it is undisputed that Bron Studios conducts business in New York, including soliciting New York residents for financing of its films. (Conover Dec., ¶¶ 7 – 16, 22 – 25). Hudson LP alleges sufficient facts that its claim – that Bron Studios breached the Greyhound Term Sheet and converted Hudson LP's funds – arises from Bron Studio's business activities in New York: soliciting financing from Hudson LP for its film productions. (Fried Dec., Ex. 1, ¶¶ 2, 4, 21, 25 – 30; Conover Dec., ¶¶ 14 – 16). *See Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 – 381 (2007) (finding that "[t]he quality of defendants' contacts here establishes a transaction of business in New York" where defendants "sought out" a party in New York and "established an ongoing … relationship with him").

Although Bron Studios contends that the Amended Complaint does not identify any meetings or other New York-based activity in which it participated (Dkt. 47, p. 9), Bron Studios:

(a) held several meetings in New York with Hudson LP, including those related to the Greyhound Loan; and (b) used gala movie premieres in New York to encourage Hudson LP to do business with it. (Conover Dec. ¶¶ 7 – 16, 21 – 26). *See Ramiro Aviles v. S & P Global, Inc.*, 380 F.Supp.3d 221, 262 (S.D.N.Y. 2019) (use of financing from New York that formed integral part of self-enrichment scheme sufficient to allege claim arises from New York contacts); *Obeid v. Mack*, No. 14-cv-6498, 2016 WL 1069678, at *3 (S.D.N.Y. Mar. 17, 2016) (actions of defendant essentially directed at depriving New York-based party of funds formed crux of conversion claims).

        b.     CPLR § 302(a)(3)

Under § 302(a)(3), a court may exercise personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state" if the non-domiciliary …

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

(N.Y. C.P.L.R. § 302(a)(3)(ii)).

Bron Studios does not address whether the Court has personal jurisdiction under CPLR § 302(a)(3)(ii), which it does.

Section 302(a)(3)(ii) requires that the plaintiff demonstrate "(1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce." *Penguin Group (USA) Inc. v. American Buddha,* 609 F.3d 30, 36 (2d Cir. 2010).

Here, Bron Studios' conversion of Hudson LP's funds was committed from either its New York office (in which case jurisdiction is proper under CPLR § 302(a)(2)) or its Toronto

headquarters (Conover Dec., Ex. 1). The conversion arose from Bron Studios' acknowledgment that it was in possession of Hudson LP's funds and failure to return the same, despite demand. (Fried Dec., Ex. 1, ¶¶ 148 – 158). The injury occurred in New York because Hudson LP is a New York limited partnership, has principal offices in New York (*id.* ¶ 2) and delivered its money to Creative Wealth from its New York bank account. (Conover Dec. ¶ 18).

Courts require that a defendant foresee that his activities "will have *some consequences* in New York, although not necessarily the exact consequences that occurred." *Capitol Records, LLC v. VideoEgg, Inc.,* 611 F.Supp.2d 349, 363 (S.D.N.Y. 2009). "This 'foreseeability' requirement relates to forum consequences generally and not to the specific event which produced injury within the state." *Parker Waichman Alonso LLP v. Orlando Firm, P.C.*, No. 09-cv-7401, 2010 WL 1956871, at *10 (S.D.N.Y. May 14, 2010) (internal quotation omitted). "New York courts require some discernible effort by the defendant to directly or indirectly serve the New York market." *Id*. Here, Bron Studios reasonably should have expected its actions to have consequences in New York by maintaining a New York office, soliciting financing in New York (including for the Greyhound Loan), and extensively presenting its films in public theatres in New York. (Conover Dec., Ex. 1, Ex. 2, Ex. 3, Ex. 4, Ex. 5, Ex. 8, Ex. 9; Conover Dec. ¶¶ 7 – 16, 21 – 26).

Bron Studios indisputably derives substantial revenue from interstate (and international) commerce through the commercial exploitation (via movie theatre sales, sales of film rights, etc.) of its films. (Conover Dec., Ex. 1, Ex. 4, Ex. 5). "There is no specific dollar threshold at which revenue becomes 'substantial' for purposes of CPLR 302(a)(3)(ii)." *Light v. Taylor,* No. 05-cv-5003, 2007 WL 274798, at *4 (S.D.N.Y. Jan. 29, 2007). Although Plaintiffs cannot identify the specific amount of revenue that Bron Studios derives from interstate commerce, "dismissal for lack of personal jurisdiction is inappropriate under CPLR § 302(a)(3) 'even where there is no proof

that a defendant derives substantial revenue from interstate ... commerce, when that knowledge is peculiarly under the control of [the defendant].'" *Parker Waichman Alonso LLP*, No. 09-cv-7401, 2010 WL 1956871, at *11 (quoting *Energy Brands, Inc. v. Spiritual Brands, Inc.,* 571 F.Supp.2d 458, 472 (S.D.N.Y. 2008)).

### 4. The Exercise of Personal Jurisdiction Does Not Violate Due Process

Bron Studios conducts business in New York and such business is substantially related to Hudson LP's claim and injury, as discussed above. "It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of § 302(a)(1), and yet ... [the defendant] cannot be found to have 'purposefully availed itself'" of the forum state within the meaning of due process. *Licci* 732 F.3d at 170 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002). Moreover, Bron Studios substantially benefits from the laws of New York because it conducts a large volume of business here (*i.e.*, millions of dollars in sales of tickets to its movies).

To defeat the exercise of jurisdiction on due process grounds, Bron Studios was required to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). However, Bron Studios does not address the reasonableness prong, and hence it is conceded. (Dkt. 47, p. 10).

Therefore, the exercise of personal jurisdiction comports with the due process clause.

### 5. In the Alternatively, the Court Should Permit Jurisdictional Discovery

"It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F.Supp.2d 179, 194 (E.D.N.Y. 2014); *see also*

*Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 597 (2d Cir. 1988) ("Before dismissing a case for want of jurisdiction, a court should permit the party seeking the court's intervention to engage in discovery of facts supporting jurisdiction.").

Plaintiffs have made a *prima facie* showing of personal jurisdiction. However, in the event that the Court disagrees, it is undisputable that Plaintiffs have made a "sufficient start towards establishing personal jurisdiction" and, in turn, the Court should order jurisdictional discovery of Bron Studios' connections to New York instead of dismissing Bron Studios from this case. *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 547 (S.D.N.Y. 1994).

## II.     THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED

### A.     Breach of Contract Claims Against Bron Studios and Cloth

Defendants contend that the Fourth Cause of Action, for breach of the Greyhound Term Sheet, should be dismissed as to Bron Studios and Cloth. In support, Defendants purport to submit a copy of the Greyhound Term Sheet, attached as Exhibit A to Cloth's declaration (ECF 46 and 46-1). This copy, however, is incomplete on its face because it is missing Schedules A (the SPWA Term Sheet) and B (the SPWA Payment Instructions). Without the complete agreement, it is impossible to discern whether the Schedules in any way affect the analysis of Hudson LP's breach of contract claim against Bron Studios and Cloth. Plaintiffs are not required to guess which version of the Greyhound Term Sheet Defendants are purporting to rely on.[3] On this threshold basis alone, Defendants' motion to dismiss the Fourth Cause of Action should be denied. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("before materials outside the record may become the basis for

---

[3] Nor would it be fair for Defendants to attempt to correct their defective, incomplete submission on reply, at a time when Plaintiffs are deprived of the opportunity to respond. It was Defendants' obligation to submit a complete copy of the Greyhound Term Sheet with their moving papers, but they failed to do so.

7091/5/8768716.v5

a dismissal, several conditions must be met," including no dispute over "the authenticity *or accuracy* of the document") (emphasis added).

Defendants' motion should be denied even if the Court chooses to consider the Greyhound Term Sheet submitted by Defendants. In both the Province of Ontario and New York, it is black-letter law that consideration is necessary for the formation of a valid, enforceable contract. *Brook Automotive v. Correiro*, 2013 CarswellOnt 555, at ¶4 (Ont. Super. Ct. Justice Jan. 25, 2013) ("legally-enforceable contract" requires "mutual exchange of consideration"); *Wright v. Carter*, 712 F. App'x 80, 81 (2d Cir. 2018) (party "did not plead consideration, and so no enforceable contract was formed") (citing *Holt v. Feigenbaum*, 52 N.Y.2d 291 (1981)). Here, Bron Studios and Cloth claim that nothing was required of them under the Greyhound Term Sheet, and that they were merely "pro rata recipients *alongside* Hudson LP" of funds owed by Bron Creative. Def. Mem. at 12. But the Greyhound Term Sheet does not support that claim.

Both Bron Studios and Cloth are explicitly named as parties in the preamble of the Greyhound Term Sheet, suggesting that they are active participants in the agreement rather than mere passive recipients of funds. (Dkt. 46-1 at 1). On page 2, in the "Funding" category, the Greyhound Term Sheet states that Bron Studios was to receive a percentage of certain facilitation fees "in payment for its investment administration services, which shall include but is not limited to, business affairs, legal and finance." *Id.* at 2. In light of Bron Studios' ownership of and control over Bron Creative (Compl. ¶ 8), it is not surprising that Bron Studios retained a role in the management of the project. The Greyhound Term Sheet further states that Cloth was to receive a percentage of payment "as an executive producing fee," indicating that he served as an executive producer on the project. (Dkt. 46-1 at 2).

The Greyhound Term Sheet's descriptions of Bron Studios and Cloth's obligations are ambiguous, though obviously extremely broad. Under both Ontario and New York law, Plaintiffs are entitled to clarity, through discovery, on the exact roles and obligations of Bron Studios and Cloth under the Greyhound Term Sheet, and in particular on the issue of whether Bron Studios and Cloth's breaches of their respective obligations is the reason Hudson LP has not been paid the amounts it is owed for the Greyhound Loan. *798839 Ontario Ltd. v. Platt*, 2016 CarswellOnt 9896, at ¶23 (Ont. Ct. App. 2016) (evidence about scope of contract can be considered when contract language ambiguous); *Bamira v. Greenberg*, 256 A.D.2d 237, 238 (1st Dep't 1998) (same).[4]

Furthermore, under the category titled "Hudson Private Fixed Return and Maturity," the Greyhound Term Sheet states that "[i]n consideration of the Hudson Private $3,000,000.00 financing, Hudson Private is purchasing the right to receive $3,360,000.00 USD from revenues of the Picture for the fixed cost of $3,000,000.00 USD, under this Term Sheet." (Dkt. 46-1 at 2). This provision does not say which of the Defendants (again, all of whom are named as parties in the preamble) owes this (unfulfilled) obligation to Hudson LP. Discovery is needed on this issue as well.

In sum, the broad, ambiguous descriptions of Bron Studios and Cloth's contractual obligations under the Greyhound Term Sheet is not a ground for dismissal, but for discovery. *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 16-cv-08507, 2017 WL 3610584, at *8 (S.D.N.Y. July 26, 2017) (where material provision is ambiguous, court "cannot resolve this issue

---

[4] The Amended Complaint does not allege that Bron Studios and Cloth's breach was limited exclusively to a failure to repay, but that Defendants' breach of the Greyhound Term Sheet merely "included" (not limited to) a failure to make full repayment of the Greyhound Loan. (Compl., ¶ 105).

at the motion to dismiss or motion for judgment on the pleadings stage" and should instead reserve ruling on provision "until after discovery"). At this stage of the action, the Court should reject Bron Studios and Cloth's incredible claim that the Greyhound Term Sheet required nothing of them other than to sit back and collect money.

**B.      Accounting Claims**

1.      Accounting Claims Against All Defendants

Defendants contend that the "the second, fifth and eighth causes of action for accountings of Fonzo, Greyhound and Bombshell fail to sufficiently allege a fiduciary relationship between Plaintiffs and any parties to the relevant term sheets." Def. Mem. at 23. Defendants are incorrect, and their argument again relies on incomplete information.

"At base, the existence of a fiduciary relationship is a factual question. It cannot be determined by recourse to rigid formulas; rather, New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." *Lehman Bros. Com. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F.Supp.2d 118, 151 (S.D.N.Y. 2000) (citation omitted); *Pan-Am. Life Ins. Co. v. Antarctica Cap. Mgmt., LLC*, No. 20-cv-9236, 2022 WL 992840, at *6 (S.D.N.Y. Mar. 31, 2022) ("New York deploys a flexible definition, defining a fiduciary relationship as one founded upon trust or confidence reposed by one person in the integrity and fidelity of another"). "Ultimately, irrespective of formal titles attributed to the parties involved, the existence and scope of a fiduciary relationship depends on the factual nature of the relationship between them. This is a factual

determination that is typically not susceptible to determination on a motion to dismiss." *Pan-Am.*

*Life Ins. Co.*, 2022 WL 992840, at *6 (quotations, citations, and internal alterations omitted).[5]

In this case, the parties' agreements memorialize a fiduciary relationship between Plaintiffs

and Defendants. For example, the Greyhound Participation Agreement[6] states in relevant part

that:

- Bron Creative will act "on behalf of" Hudson LP in collecting and receiving payments from borrowers, guarantors, and recovery of collateral. (Conover Dec., Ex. 6, ¶ 2);

- "To the extent of the Participation, [Bron Creative] is and shall be a trustee and agent for [Hudson LP] in administering and servicing the Financing Agreements and all rights, remedies and benefits thereunder," and Bron Creative "shall have the obligation to account to" Hudson LP for its "share of the Collections." (*Id.*, ¶ 3);

- "[Bron Creative] agrees to pay and otherwise account to [Hudson LP] on or about fifteen (15) calendar days after [Bron Creative's] actual receipt of amounts due and payable to [Bron Creative] pursuant to the Financing Agreements, amounts due and payable to [Hudson LP]." (*Id.*, ¶ 4); and

- "[Bron Creative] agrees that at any time and from time to time during normal business hours, it will permit [Hudson LP] or its agent to examine [Bron Creative's] books, records and accounts relating to the Collateral and the Financing Agreements." (*Id.*, ¶ 8).[7]

---

[5] The existence and scope of a fiduciary relationship is an issue of fact under Ontario law as well. *Simone v. Daley*, 1999 CarswellOnt 551, at ¶10 (Ont. Ct. App. Mar. 1, 1999) ("[I]t is a question of fact in each case whether a fiduciary relationship exists and that it is the nature of the relationship, not the special category of the actors involved, which gives rise to the finding of a fiduciary"); *Blake v. Great Northern Fin. Corp.*, 1978 CarswellOnt 383, at ¶31 (Ont. Sup. Ct. Jan. 4, 1978) (discussing case and noting that "the right to an accounting depended on an alleged fiduciary relationship between the parties, and that was the main issue of fact between the parties and was hotly contested").

[6] In responding to Defendants' motion to dismiss, Plaintiffs may submit, and the Court may consider, documents incorporated by reference in the Amended Complaint, such as the Greyhound Participation Agreement (Compl. ¶ 47). *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint").

[7] Although the Greyhound Term Sheet is governed by Ontario law, the Greyhound Participation Agreement is governed by New York law. (Conover Dec., Ex. 6, ¶ 17).

14

The other agreements contain equivalent terms with respect to the parties named in those agreements. (Conover Dec., Ex. 11, ¶¶ 2, 3, 4, 8, 9) (Fonzo Participation Agreement between Creative Wealth and Hudson LP); (Conover Dec., Ex. 14, ¶¶ 2, 3, 4, 8) (Bombshell Participation Agreement between Creative Wealth and Hudson LP); (Conover Dec., Ex. 13, pp. 17-24, ¶¶ 2, 3, 4, 8) (Bombshell Participation Agreement between Creative Wealth and Hudson Corp.).

To the extent there is a conflict between the terms of the Greyhound Term Sheet (which states that the parties are independent contractors) and the other relevant agreements on the issue of whether a fiduciary relationship exists, that issue requires discovery to be resolved. *Berman v. Rotterman*, No. 10-cv-1044, 2011 WL 2149431, at *6 (W.D.N.Y. June 1, 2011) (denying motion to dismiss accounting claim and holding that "[w]hether plaintiffs can prove the factual basis for a fiduciary relationship at trial is another matter, but their initial pleading suffices to give them a chance to prove that factual basis during discovery"); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F.Supp.3d 191, 208 (S.D.N.Y. 2014) ("[A] claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)").

Defendants also contend the accounting causes of action should be dismissed because they are duplicative of Plaintiffs' specific performance causes of action. Def. Mem. at 23-24. However, none of the cases cited by Defendants involve dismissal of alternative *equitable* claims (such as for accounting and specific performance). Rather, Defendants' cases stand for the proposition that equitable claims may not coexist with *actions at law* (such as breach of contract claims). But these cases are inapposite. Here, the scope of Plaintiffs' accounting claims is broader than the scope of their breach of contract claims: the accounting claims are not based on specific contracts but on *the overall relationship* between the parties. In contrast, the breach of contract claims are based on particular agreements. (*Contrast* Compl. ¶¶ 89, 108, 129 (accounting claims premised on

overall relationship between relevant parties) *with id.* ¶¶ 86, 105, 125 (breach of contract claims arise from particular agreements)). The accounting and breach of contract claims are thus not duplicative. *Meskunas v. Auerbach*, No. 17-cv-9129, 2019 WL 719514, at *5 (S.D.N.Y. Feb. 20, 2019) (denying motion to dismiss accounting claim that "plainly seeks relief different from the amended complaint's other claims and thus is not duplicative").

    2.    <u>Accounting Claims Against Bron Studios and Cloth in Particular</u>

Contrary to Defendants' assertions otherwise (Def. Mem. at 13-16), the Amended Complaint sufficiently alleges that Bron Studios and Cloth owe fiduciary duties to Plaintiffs. As stated above, a fiduciary relationship is not based on rigid formulas, or even the language in a contract, but rather on a flexible view of whether, under the facts at hand, "one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." *Lehman Bros. Com. Corp.*, 179 F.Supp.2d at 151 (citation omitted).

Here, Bron Studios and Cloth were sufficiently involved in the projects for the Court to conclude, at this early stage, that they owed a fiduciary duty to Plaintiffs. Bron Studios wholly owned and controlled Fonzo, LLC, which in turn owned the rights to the Fonzo film. (Compl. ¶ 31; Conover Dec., Ex. 10 at 1 (Fonzo Term Sheet).[8] The Bombshell Term Sheet entered into by Hudson Corp. states that Hudson Corp. is to receive the "latest quarterly financial information about the Picture directly from *BRON Studios*." (Conover Dec., Ex. 13 at 2) (emphasis added). Bron Studios is a named party in the Greyhound Term Sheet, and its "investment administration services" in connection with that project "include, but is not limited to, *business affairs*, legal and *finance*." (Dkt. 46-1 at 1 – 2) (emphases added). Collectively, these facts are more than enough

---

[8] Likewise, Bron Studios wholly owned and controlled Harry Haft Films, LLC (Compl. ¶ 70) and Bron Studios served as a guarantor for that project (Conover Dec., Ex. 15 at 1).

to demonstrate, at this stage, that Bron Studios undertook a leading role in managing and reporting on the finances of these projects and that it is in a superior position of knowledge to perform a financial accounting with respect to Plaintiffs' loans.

The same applies to Cloth in his individual capacity. Cloth is signatory on *all* of the relevant agreements, not only on behalf of Creative Wealth but also on occasion on behalf of Bron Creative. (Dkt. 46-1 at 1 – 2; Conover Dec., Ex. 6) (Cloth as signatory for Bron Creative on Greyhound Term Sheet and Greyhound Participation Agreement). But the agreements indicate that Cloth was more than a mere signatory. The Greyhound Term Sheet shows that Cloth is a listed party and served as executive producer for the project. (Dkt. 46-1 at 1 – 2). Cloth is also listed as a party, in his individual capacity, in the Bombshell Term Sheet for Hudson Corp. (Conover Dec., Ex. 13). And in April 2021, Cloth acknowledged, in writing, that *outstanding amounts were owed to Plaintiffs on the projects*, confirming his direct knowledge and access to relevant financial information. (Compl. ¶¶ 41, 53, 67, 77; Conover Dec., Ex. 16). Cloth's relationship to Plaintiffs and superior knowledge of the projects' finances qualifies him an appropriate person to furnish an accounting to Plaintiffs.

In sum, on a motion to dismiss, plaintiffs are not required to prove the existence of a fiduciary relationship between Plaintiffs and Defendants (including Bron Studios and Cloth), but only to allege sufficient facts for the Court to conclude that such a relationship may exist. The Amended Complaint, and the agreements referenced in that complaint, do so handily. *Pan-Am. Life Ins. Co.*, 2022 WL 992840, at *6 (fiduciary duty "based upon trust or confidence" sufficiently alleged to survive motion to dismiss).

C.     **Conversion Claims**

1.     Conversion Claims Against All Defendants

Defendants' challenge to the Amended Complaint's conversion claims fails in its entirety. Plaintiffs state, with specificity, the exact amount of money that Hudson advanced for each project:

- $3,000,000 (from Hudson LP) to Creative Wealth, as part of Creative Wealth's loan to Fonzo, LLC of up to $12,600,000 in connection with the production of the Fonzo film (Compl. ¶ 31);

- $3,000,000 (from Hudson LP) to Creative Wealth in connection with Bron Creative's co-financing and distribution of the Greyhound film (*id.* ¶ 43);

- $3,000,000 (from Hudson LP) to Creative Wealth in connection with co-financing and distribution of the Bombshell film (*id.* ¶ 55);

- $5,000,000 (from Hudson Corp.) to Creative Wealth in connection with co-financing and distribution of the Bombshell film (*id.*); and

- $3,976,250 (from Hudson LP) to Creative Wealth for its loan to Harry Haft Films, LLC for up to $12,500,000 in connection with the production of the Harry Haft film (*id.* ¶ 70).

The Amended Complaint thus identified specific amounts provided by Hudson. *See Banco Cent. de Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01-cv-9649, 2005 WL 1561504, at *1 (S.D.N.Y. June 30, 2005) ($16 million transferred to Citibank accounts specifically identifiable); *ADP Inv. Commc'n Servs., Inc. v. In House Att'y Servs., Inc.*, 390 F.Supp.2d 212, 224-25 (E.D.N.Y. 2005) (allegations seeking exact sum of money "sent by wire transfer from [plaintiff's] account with JP Morgan Chase in New York to [defendant's] account at California Bank & Trust" sufficiently specific and identifiable).[9]

The Amended Complaint also alleges that each loan tranche was advanced for a specific purpose. *See Martinez v. Capital One, N.A.*, 863 F.Supp.2d 256, 266 (S.D.N.Y. 2012) (differentiating "specifically identifiable" funds for a "specific purpose" from "general" funds used

---

[9] Furthermore, the Greyhound Term Sheet identifies certain "Facilitation Fees" that Creative Wealth disbursed to Bron Studios and Cloth. ECF 46-1 at p. 2. To the extent that Creative Wealth used Hudson LP's funds to make these disbursements, those funds should be returned to Hudson LP.

in ordinary course of business). That Hudson's loans were part of larger financing activity for each project does not defeat the conversion claim. *Petrone v. Davidoff Hutcher & Citron, LLP*, 150 A.D.3d 776, 778 (2d Dep't 2017) (fact that "funds were commingled with other money in the escrow account does not preclude a cause of action for conversion"). No greater specificity is required at this stage. *Thys v. Fortis Sec. LLC*, 74 A.D.3d 546, 547 (1st Dep't 2010) ("Although the action must be for recovery of a particular and definite sum of money, the specific bills need not be identified").

Defendants rely on inapposite authorities. They cite cases in which funds were simply funneled into general accounts. *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F.Supp.2d 133, 151 (S.D.N.Y. 2000) (holding that funds were not specific and identifiable because they were transferred to general corporate account); *McBride v. KPMG Int'l*, 135 A.D.3d 576, 580 (1st Dep't 2016) (funds deposited for general investment and not for specific purpose). Defendants also cite cases in which no specific amount whatsoever was identified. *Rose v. Rahfco Mgmt. Grp.*, No. 13-cv-5804, 2014 WL 7389900, at *7 (S.D.N.Y. Dec. 15, 2014) (plaintiffs alleged "only that [a]ll or some of their investment money was converted" rather than "particular and definite sum of money"); *Glob. View Ltd. Venture Capital v. Great Cent. Basin Expl., LLC*, 288 F.Supp.2d 473, 480 (S.D.N.Y. 2003) ("complaint merely refer[red] to unspecified 'monies and assets . . . in an amount in excess of $75,000'").

While Defendants argue that Hudson's only recourse is against Creative Wealth (Def. Mem. at 18), the Amended Complaint specifically alleges that "Bron Studios acknowledged it was in possession of Hudson LP's funds." (Compl. ¶ 150). Furthermore, documentary evidence shows that Bron Studios repeatedly acknowledged, in writings to Hudson's Christopher Conover, that it is in possession of Hudson's funds. (Conover Dec., Ex. 7, Ex. 9).

19

Given the Defendants (not Plaintiffs) have exclusive knowledge of what happened behind-the-scenes with Hudson's funds, discovery is needed before the issue of possession can be decided. *Marcus v. Hemphill Harris Travel Corp.*, 193 A.D.2d 543, 544 (1st Dep't 1993) (reversing dismissal of, *inter alia*, conversion claim "particularly since plaintiffs have not yet been accorded the opportunity to complete discovery as to critical facts in the exclusive possession of defendants"). Furthermore, that Hudson initially advanced its funds to Creative Wealth does not preclude Hudson from bringing a conversion claim against Bron Studios: conversion can be based not only on a wrongful "taking," but also on a wrongful "detention" of funds. *Newbro v. Freed*, 409 F.Supp.2d 386, 394 (S.D.N.Y. 2006), *aff'd*, 2007 WL 642941 (2d Cir. Feb. 27, 2007).

Relatedly, contrary to Defendants' contention, Hudson did not lose its possessory right to demand the return of its funds. New York state and federal courts have consistently and uniformly found that when money is designated to be used for a specific purpose and the money is then used for an unauthorized purpose, as is alleged to have occurred here (Compl. ¶¶ 79-82), the party that originally tendered the money has not lost its possessory interest and may state a claim for conversion. *Petrone*, 150 A.D.3d at 777-78 (plaintiff retained possessory interest when funds voluntarily tendered to defendant were instead used for unauthorized purpose); *Van Syckle v. C.L. King & Assocs., Inc.*, 822 F.Supp. 98, 106 (N.D.N.Y 1993) (allowing a conversion claim where "defendants were initially in lawful possession of plaintiffs' [funds]" but exceeded their authority as to such funds); *Bankers Tr. Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro*, 187 A.D.2d 384, 385 (1st Dep't 1992) (settlement funds that were rightfully tendered to escrow account were properly subject of conversion claims once those funds were used for unauthorized purpose); *Meese v. Miller*, 79 A.D.2d 237, 243-44 (4th Dep't 1981) (allowing claim for conversion where

funds voluntarily tendered to defendant were designated for the specific purpose of purchasing a computer and were not used for that purpose).

Defendants also argue the conversion claim fails because it is based upon alleged breaches of contracts. Def. Mem. at 20-21. Not so. As a preliminary matter, Defendants' argument is self-contradictory: since Defendants elsewhere assert that Bron Studios and Cloth had no obligations under the relevant agreements (and thus could not breach them), Hudson's conversion claim against Bron Studios and Cloth cannot possibly be duplicative of the breach of contract claims, by Defendants' own logic.

In any event, it is well settled under New York law that a plaintiff may maintain a breach of contract claim and a conversion claim, so long as the conversion claim is based on a wrongful or illegal act separate and distinct from a mere breach of contract. *In re MF Global Holdings Ltd. Inv. Litig.*, 998 F.Supp.2d 157, 184 (S.D.N.Y. 2014). State and federal courts applying New York law have consistently allowed conversion claims to proceed in situations where the converting party's conduct goes beyond simply breaching its contractual duties. *Id.* (allowing conversion claim despite contract between parties because plaintiff also alleged defendants violated regulations that were "independent of the contract itself"); *ADP Inv. Commc'n Servs., Inc.*, 390 F.Supp.2d at 223 (allowing breach of contract and conversion claims where allegations in conversion claim were distinct from contract claim); *Wildenstein v. 5H & Co., Inc.*, 97 A.D.3d 488, 492 (1st Dep't 2012) (allowing breach of contract and conversion claims where plaintiff alleged separate tort of extortion).

Here, the conversion claim goes beyond the contractual obligations in the relevant agreements. Plaintiffs allege that the "Film Loan proceeds were used by Creative Wealth for unrelated purposes and dissipated to unidentified recipients, all with the knowledge and approval

of Cloth." (Compl. ¶ 79). Specifically, Plaintiffs allege that "the $3 million advanced by Hudson LP for the Greyhound Loan was utilized for purposes other than in connection with the 'Greyhound' motion picture and that such funds were never conveyed to the underlying production company borrower, Sony Pictures" (*id.* ¶ 80); that Cloth "double-sold the same interest in the Bombshell Loan to both Hudson LP and an affiliate of Creative Wealth" (*id.* ¶ 81); and that Bron released the Capone (*i.e.*, Fonzo) via PVOD (video on demand) rather than by theatrical release, thereby destroying the value of Hudson LP's investment while still holding on to Hudson LP's funds (*id.* ¶ 82).

Based on these allegations, Hudson is entitled to discovery on Defendants' misuse of Hudson's money in ways and for purposes not contemplated by the relevant agreements. *Berman*, 2011 WL 2149431, at *4 (denying dismissal of conversion claim and holding plaintiffs entitled to discovery where plaintiffs alleged "businesses that they sought to purchase never existed" and that money was used "by defendants for any other purpose").

2.    Conversion Claims Against Bron Studios and Cloth in Particular

The Amended Complaint sufficiently pleads a conversion claim against Bron Studios. As noted, Plaintiffs allege that "Bron Studios acknowledged it was in possession of Hudson LP's funds" and sets forth specific communications with Bron Studios, including with its CEO, Mr. Gilbert, about Plaintiffs' funds. (Compl. ¶¶ 151-154). Bron Studios — not Creative Wealth — provided the April 21, 2021 letter concerning the status of the "production loans," including Hudson's loans. (*Id.* ¶¶ 153-154). These allegations allow for a reasonable inference that Bron Studios continues to wrongfully detain Hudson's money. Even if Bron Studios does not directly possess Hudson's funds, Bron Studios may nevertheless be held liable if it is the reason the funds have not been returned to Hudson despite its demands. (*Id.* ¶ 155); *Weingarten v. Warren*, 753 F.

Supp. 491, 497 (S.D.N.Y. 1990) ("Possession of the property is unnecessary to state a claim for conversion; it is sufficient that the wrongdoer interfere with another's right to possession").

The Amended Complaint sufficiently pleads a conversion claim against Cloth as well. Under New York law, "a corporate officer who participates in the commission of a tort may be held individually liable, ... regardless of whether the corporate veil is pierced." *Roxx Alison Ltd. v. Shutle, Inc.*, 73 Misc. 3d 1222(A), at *3 (Sup. Ct. N.Y. Cnty. 2021) (quoting *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 49 (1st Dep't 2012)). "Moreover, a director may be held individually liable to third parties for a corporate tort if he either participated in the tort or else directed, controlled, approved, or ratified the decision that led to the plaintiff's injury." *Id.* (quoting *Fletcher*, 99 A.D.3d at 49). Here, as mentioned, Cloth participated in the agreements in his individual capacity. He also made representations to Plaintiffs about the loans and the amounts wrongfully withheld. (Compl. ¶ 25-28, 41, 53, 67, 77). Cloth was also the one to inform Plaintiffs about the misuse of funds. (*Id.* ¶¶ 79-82). Collectively, these allegations are sufficient to state a conversion claim against Cloth. *Roxx Alison Ltd.*, 73 Misc. 3d 1222(A), at *3 (conversion claim survived based on allegations defendant "personally participated in the tort").

## D.    <u>Alter Ego Claim Against Cloth</u>

Under Ontario law,[10] courts may disregard the corporate form not only when a business entity "is incorporated for an illegal, fraudulent or improper purpose" but also when "those in

---

[10] "Under New York's choice-of-law rules, the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Partner Reins. Co. Ltd. v. RPM Mortg., Inc.*, No. 18-cv-5831, 2020 WL 6690659, at *7 (S.D.N.Y. Nov. 13, 2020) (quotations and citations omitted). New York federal courts have concluded that "the relevant law of New York and Ontario are substantially similar on the question of piercing the corporate veil." *Micro Fines Recycling Owego LLC v. Ferrex Engin., Ltd.*, 585 F.Supp.3d 289, 295 (N.D.N.Y. Feb. 9, 2022) (quotations and citation omitted); *Giarla v. Coca-Cola Co.*, No. 17-cv-359S, 2021 WL 1110397, at *5 (W.D.N.Y. Mar. 23, 2021). The Amended Complaint's twelfth cause of action for alter ego liability should be analyzed the same way whether

control expressly direct a wrongful thing to be done." *Mitchell v. Lewis*, 2016 CarswellOnt 19090, at ¶18 (Ont. Ct. App. 2016) (statement of claim could allege veil piercing based on individual respondents' misappropriation of monies owing to appellants). Here, the allegations of the Amended Complaint permit the inference that Cloth used Creative Wealth merely as a vehicle to divert funds. There is no indication that Creative Wealth had, or used, its own funds for the Film Loans. Rather, the relevant agreements suggest that Creative Wealth raised and advanced funds from others, including Hudson. Nevertheless, Cloth specifically represented to Hudson that Creative Wealth was well-funded and possessed sufficient security to ensure that the Film Loans were repaid. (Compl. ¶ 28). That representation turned out to be untrue. Cloth also used the proceeds received by Creative Wealth for unrelated purposes and dissipated the money to unidentified recipients. (*Id.* ¶¶ 79-81). There can be no question that Cloth was the controlling force behind Creative Wealth. Cloth used Creative Wealth as a superficial convenience rather than as a bona fide business entity, at times forsaking the façade and entering into agreements in his individual capacity. (Conover Dec., Ex. 12; Dkt. 46-1).

Based on his complete domination of Creative Wealth and use of the company to improperly divert Hudson's funds, Cloth can and should be held liable as an alter ego of Creative Wealth. *Greenwald v. Ridgevale Inc.*, 2016 CarswellOnt 6968, at ¶27 (Ont. Super. Ct. Justice May 4, 2016) (proposed amendments stated defendants were alter egos of each other based on allegations that "funds were immediately transferred out of" one defendant to another and the receiving defendant "paid the expenses for the project and was the ultimate beneficiary of the agreement with the plaintiffs"); *1828445 Ontario Ltd. v. Guerra*, 2014 CarswellOnt 11236, at ¶19

---

under New York or Ontario law. Because Defendants have cited Ontario law on this issue, Plaintiffs rely on Ontario law as well.

(Ont. Super. Ct. Justice June 3, 2014) (concluding individual was alter ego of company that had "no financial resources" and "funds required for the deposits under the assignment agreement were provided by others," and company was used as shell "for the sole purpose of receiving the assignment of the agreements of purchase and sale").

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss, in part, the Amended Complaint should be denied.

Dated: New York, New York
      October 27, 2022

**MEISTER SEELIG & FEIN LLP**

By: /s/ Kevin Fritz
     Mitchell Schuster
     Kevin Fritz
     Amit Shertzer
     Eva Sullivan
125 Park Avenue, 7th Floor
New York, New York 10017
Tel: (212) 655-3500
E-mail: ms@msf-law.com
E-mail: kaf@msf-law.com
E-mail: as@msf-law.com
E-mail: ems@msf-law.com
*Attorneys for Plaintiffs*